**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 44408**

| | | |
|---|---|---|
| In the Interest of the DOE CHILDREN, Children Under the Age of Eighteen (18) Years. | ) ) ) | |
| ------------------------------------------------------- | ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | **Boise, January 2017 Term** |
|      Petitioner-Respondent, | ) ) | **2017 Opinion No. 27** |
| v. | ) ) | **Filed:  March 10, 2017** |
| JANE DOE (2016-32), | ) ) | **Stephen W. Kenyon, Clerk** |
|     Respondent-Appellant, and | ) ) ) | |
| GUARDIAN AD LITEM, | ) ) | |
|     Intervenor-Respondent. | ) ) ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County.  Hon. Michael B. Kennedy, Magistrate Judge.

Magistrate court judgment terminating parental rights, <u>affirmed</u>.

Wixom Law Offices, Idaho Falls, for appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.

Carey Perkins, LLP, Boise, for intervenor-respondent.

_____

ON THE BRIEFS

BURDICK, Chief Justice.

Jane Doe (Mother) appeals the Bonneville County magistrate court's termination of her parental rights to her two minor children, K.J.M. and K.M.M. (Children). The Idaho Department of Health and Welfare (IDHW) filed a petition to terminate Mother's parental rights to Children on November 10, 2015. An eight-day trial was held, where over forty witnesses testified and

1

one-hundred-eighty exhibits were admitted. The magistrate found termination proper on several bases and entered a judgment to that effect. On appeal, Mother asserts that the magistrate's judgment is not supported by sufficient evidence and that the magistrate committed several errors. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the termination of Mother's parental rights to her two minor children, K.J.M. (born August 2012) and K.M.M. (born August 2013).[1] IDHW became involved in this case in November 2012, when it learned Mother and her boyfriend, who was also K.J.M.'s father, were blowing marijuana smoke in K.R.C.'s and K.J.M.'s faces. IDHW visited Mother's home and noted it was "filthy with pills and drug paraphernalia scattered throughout the home[.]" Further investigation revealed that Mother's boyfriend was physically abusing Mother. Mother's boyfriend was arrested for felony strangulation of Mother. Apparently, Mother dropped the charges "due to him being the sole caretaker of the children and needing his help . . . ."

In addition, Mother's boyfriend was physically abusing K.R.C. and K.J.M. Mother reported she had witnessed her boyfriend "shake 4 month old [K.J.M.] . . . and hit[] 1 year old [K.R.C.], leaving bruises on her legs and bottom." Even so, Mother routinely placed them in the care of her boyfriend while she went to work, not "fully comprehend[ing] the danger she [was] placing her children in . . . ." IDHW concluded Mother lacked "capacity to protect her children from harm" and became concerned about their safety. IDHW filed motions for appointment of a guardian ad litem and for protective supervision under the Child Protective Act, both of which were granted. IDHW maintained protective supervision until July 2014.

A case plan was entered during protective supervision, requiring Mother to do several things, including: (1) complete parenting and home organization classes; (2) complete domestic violence safety classes; (3) provide a plan stating how she would ensure Children's safety; (4) ensure her home was clean; (5) clear her home's floor of small objects, due to Children's ages; (6) wash dishes and vacuum daily; (7) submit to random drug testing; and (8) acquire IDHW's approval before allowing others to visit or reside in her home. Nevertheless, IDHW observed "the dishes were not done, the floor needed to be vacuumed, food was smeared into [the] carpet,

---

[1] Mother has one other child, K.R.C. (born March 2012). K.R.C. is in the custody of her paternal grandparents, which is not at issue on appeal. K.R.C., however, is discussed in our opinion where relevant.

and there were clothes on the floor." Thus, IDHW concluded Mother "was either not wanting to change the way she lived or wasn't taking this seriously."

During protective supervision, Mother's drug problem became evident. For instance, Mother was arrested in spring 2013 for failure to appear, and during the arrest, police found a urine-filled condom stashed in her underwear. That arrest occurred while Mother was traveling to a drug testing center, "indicating that Mother planned on falsifying her drug test." Then, in spring 2014, Mother tested positive for "Methamphetamine and Amphetamine." Mother testified she had used methamphetamine off-and-on during her pregnancies, further conceding she had used methamphetamine "during at least a portion of the pregnancy." By 2014, Mother was using methamphetamine "pretty regularly" on a daily basis. In a mental health assessment performed on November 30, 2015, Mother stated that she "rel[ied] on drugs to feel normal."

Mother was incarcerated several times during protective supervision. She was arrested and incarcerated in spring 2013 for failure to appear. After failing a drug test in spring 2014, Mother was incarcerated until the week of June 23, 2014. Mother was again arrested and incarcerated on July 21, 2014, evidently for repeatedly violating a court order preventing non-approved persons from residing with her. IDHW concluded Children were at a high level of threat, due to Mother's incarcerations and "concerns of ongoing substance abuse and chronic neglect of children."

IDHW made an unannounced visit to Mother's apartment on July 21, 2014. Mother was home, but asleep. K.J.M. was seen playing in the dirt with no clothes or shoes, supervised by a man who indicated he had recently been released from jail and was using methamphetamine. K.M.M. was seen in her play pen, with a diaper "that was unchanged and bulging and almost overflowing with feces." The IDHW "worker woke up [Mother] and told her that she needed to change [K.M.M.'s] diaper and that [Children] were being supervised by a man . . . [who] the worker never met. [Mother] then ran out from her bedroom looking for her children." Thereafter, IDHW concluded Mother was unable to meet the needs of Children and filed a motion for legal custody. The motion was granted, and Children have been in IDHW's legal custody since July 22, 2014.

Another case plan was entered on August 11, 2014, requiring Mother to do several things, including: (1) stay sober; (2) find stable housing; (3) acquire IDHW's approval before allowing others to reside in her home; and (4) submit monthly budgets to IDHW. A similar case

3

plan was entered on March 16, 2015. Mother failed to meet these requirements. As IDHW found in March 2015:

> [Mother] has been discharged from Family Drug [C]ourt and treatment. She completed a Nelson's Truth Verification Testing and Investigation on February 7, 2015. Results indicated that she recently relapsed by smoking meth for a period of 3-4 days, having unapproved associations, she had also been on 5-7 ride alongs where she knows people were dealing meth, as well as delivered it once by person. She admitted to facilitating a drug transaction by connecting a dealer to a person, having sex with 5 different individuals, as well as [being] in contact with 2 boy friends in jail while relationships or contact with these persons were not permitted.

Thus, IDHW concluded Mother had shown no improvement despite IDHW's involvement but, in fact, had regressed.

IDHW filed a petition to terminate Mother's parental rights to Children on November 10, 2015.[2] An eight-day trial was held in May 2016. Forty-three witnesses testified, twelve more witnesses submitted stipulated offers of proof, and over one-hundred-eighty exhibits were admitted. The magistrate found termination proper on several bases and entered a judgment to that effect. This appeal timely followed.

## II.   STANDARD OF REVIEW

Under "Idaho Code section 16-2005(1), a court may terminate parental rights if it finds that doing so is in the best interests of the child and that at least one of five grounds for termination is satisfied." *In re Doe (2014-23)*, 157 Idaho 920, 923, 342 P.3d 632, 635 (2015). "The grounds for terminating a parent-child relationship must be proved by clear and convincing evidence." *In re Doe (2013-15)*, 156 Idaho 103, 105–06, 320 P.3d 1262, 1264–65 (2014); *see also* I.C. § 16-2009. "Clear and convincing evidence is evidence that indicates the thing to be proved is highly probable or reasonably certain." *In re Doe (2014-17)*, 157 Idaho 694, 699, 339 P.3d 755, 760 (2014). "This Court must 'conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment, as the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties.' " *In re Doe (2014-23)*, 157 Idaho at 923, 342 P.3d at 635 (quoting *Doe I v. Doe II*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010)). "[T]his Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision."

---

[2] By that time, Children's fathers' parental rights had already been terminated.

*Doe I*, 150 Idaho at 49, 244 P.3d at 193. "Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and quotation marks omitted). Even if conflicting evidence is in the record, the judgment must be upheld so long as it is supported by substantial, competent evidence. *Doe I v. Doe*, 138 Idaho 893, 905–06, 71 P.3d 1040, 1052–53 (2003) (citation omitted).

## III.    DISCUSSION

**A.    Substantial, competent evidence supports the magistrate's judgment.**

Under Idaho Code section 16-2005(1)(b), termination is proper where clear and convincing evidence shows that the "[t]he parent has neglected . . . the child" and termination is in the best interests of the child. Idaho Code defines several bases of neglect. One basis of neglect arises where:

> The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:
>
> (i) The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and
>
> (ii) Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

I.C. § 16-2002(3)(b).[3]

Another basis of neglect includes a child:

> Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being[.]

I.C. § 16-1602(28)(b).

The magistrate found neglect satisfied under the above definitions. In relevant part, the magistrate's order provides:

> The court finds by clear and convincing evidence, pursuant to Idaho Code § 16-2009, that the termination of the parent-child relationship between the Mother and the children, (a) is in the best interests of said children and that (b) the Mother has neglected the children as defined in Idaho Code § 16-1602(31), and that (c) the Mother has substantially failed to comply with the court's orders and case plan in this child protective act case (after repeated warnings by the court and employees of the IDHW that failure to comply could result in the filing of a petition to terminate her parental rights), and (d) the IDHW has had temporary or

---

[3] The trial occurred in May 2016. Several relevant rules and statutes were amended and took effect July 1, 2016. Where relevant, we cite to the pre-amended rules and statutes.

legal custody (with placement in foster care) of the said children for fifteen (15) of the most recent twenty-two (22) months, and (e) reunification of the Mother and the children had not been accomplished by the last day of the fifteenth month in which the children had been in foster care, and (f) the Mother has been unable to discharge her parental responsibilities and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period of time and will be injurious to the children's health and well-being, and that the above findings of this paragraph justify termination, pursuant to Idaho Code § 16-2005(1).

Thus, even though only one basis of neglect need be found, the magistrate found at least two bases of neglect: (1) non-compliance with case plans and failure to timely reunify under Idaho Code section 16-2002(3)(b); and (2) parental unfitness under Idaho Code section 16-1602(28)(b). The magistrate further found termination was in the best interests of Children. As shown below, substantial, competent evidence supports those findings.

      1.      <u>Neglect under Idaho Code section 16-2002(3)(b).</u>

As noted, one basis of neglect was that:

(c) [T]he Mother has substantially failed to comply with the court's orders and case plan in this child protective act case (after repeated warnings by the court and employees of the IDHW that failure to comply could result in the filing of a petition to terminate her parental rights), and (d) the IDHW has had temporary or legal custody (with placement in foster care) of the said children for fifteen (15) of the most recent twenty-two (22) months, and (e) reunification of the Mother and the children had not been accomplished by the last day of the fifteenth month in which the children had been in foster care[.]

That finding tracks the plain language of Idaho Code section 16-2002(3)(b).

Mother, however, argues the case plans are invalid and she should not be punished for not complying with them. She points to Idaho Code section 16-1621(3), which requires the case plans to set forth reasonable efforts that will be made toward reunification. Mother contends the case plans do not set forth any such reasonable efforts and, thus, are invalid. Mother made this argument below, but the magistrate found the case plans substantially complied with section 16-1621(3) and were entered by the child protection court without objection.

We reject Mother's argument. For one, Mother never objected when the case plans were entered by the child protection court. Moreover, the case plans do in fact set forth reasonable efforts toward reunification. All case plans state that IDHW will assist Mother in obtaining parent coaching. In addition, the second and third case plans state that IDHW will: (1) refer Mother to substance abuse help; (2) attend family drug court with Mother; (3) assist Mother in

6

finding housing; (4) approve those who Mother can allow to reside in her home; (5) assist Mother in formulating a budget; and (6) provide agencies to assist Mother in obtaining a mental health assessment. Contrary to Mother's argument, the case plans do set forth reasonable efforts toward reunification. Thus, we reject Mother's argument, which attempts to shift the analysis from its proper focus. *Cf. In re Doe*, 150 Idaho 88, 91, 244 P.3d 232, 235 (2010) ("Not infrequently, this Court is presented with arguments that the Department did not do enough when the analysis should primarily focus on what the putative parent did or did not do.").

Having concluded that the case plans are valid, we are satisfied with the magistrate's finding that Mother failed to comply with them. At trial, Mother unequivocally testified she violated the case plans by: (1) failing to stay sober; (2) not obtaining stable housing; (3) failing to submit budgets to IDHW; (4) exhibiting instability as a result of incarcerations, probation violations, and drug use; and (5) failing to ensure the safety and well-being of Children.

In addition, the magistrate was correct that IDHW had legal custody for fifteen of the most recent twenty-two months and reunification was not accomplished by the last day of the fifteenth month. IDHW obtained legal custody on July 22, 2014. The trial was held in May 2016, and the termination judgment was entered on August 1, 2016. Over twenty-four months lapsed from when IDHW obtained legal custody until the termination of Mother's parental rights, during which reunification was never accomplished, much less by the last day of the fifteenth month. Thus, neglect is satisfied under section 16-2002(3)(b).

We acknowledge our recent case of *In re Doe (2016-14)*, slip op. 44092 (Sept. 9, 2016). There, parental rights were terminated under section 16-2002(3)(b). *Id.* at 3. The parent appealed and argued termination was improper because, although she had failed to comply with her case plan, compliance was impossible due to the fact that she was incarcerated when the case plan was entered. *Id.* at 3–4. IDHW argued the parent was responsible for failing to comply with the case plan because she could have done so had she not been incarcerated. *Id.* Noting that argument "ha[d] no small measure of appeal," we held "that impossibility may be asserted as a defense to a claim of neglect founded upon failure to comply with the requirements of a case plan." *Id.* at 4. We instructed that "the trial court must find that the parent is responsible, whether directly or indirectly, for non-compliance with the requirements of a case plan." *Id.* at 5. Willful non-compliance, however, need not be shown. *Id.* We concluded by emphasizing that:

Earlier in this opinion, we stated that the Department's arguments in defense of the magistrate's decision had "no small measure of appeal." However, it is the role of the trial court, not this Court, to make the factual finding whether Doe bears responsibility for her failure to comply with the case plan. The magistrate court made no findings as to whether Doe was responsible for the circumstances which led to her failure to complete the case plan.

*Id.* at 7.

Mother's compliance with the case plans was not impossible, nor even unreasonable. Based on Mother's unequivocal testimony set forth above, Mother was responsible, either directly or indirectly, for not complying with her case plan. Unlike the situation in *In re Doe (2016-14)*, Mother was not incarcerated when the case plans were entered. While Mother was incarcerated for some of the time *during* her case plans, she conceded fault for failing to: (1) stay sober; (2) find stable housing; (3) submit budgets to IDHW; and (4) ensure the safety and well-being of Children. As Mother testified, "[she] can't blame anyone . . . because it was all [her] choice. It was all [her] decision. [She] can't blame anyone else but [her]self."

The magistrate correctly found neglect under section 16-2002(3)(b) is satisfied.

2. Neglect under Idaho Code section 16-1602(28)(b).

Although only one basis of neglect is sufficient to terminate parental rights, the magistrate found as a second basis of neglect:

Mother has been unable to discharge her parental responsibilities and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period of time and will be injurious to the children's health and well-being[.]

As noted, neglect includes a child "[w]hose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being[.]" I.C. § 16-1602(28)(b).

The magistrate's finding was correct. In its initial investigation, IDHW concluded Mother lacked capacity to protect Children from harm and was endangering Children by routinely placing them with her abusive boyfriend. As a result, IDHW obtained protective supervision over Children. Several issues became clear during protective supervision. One issue was Mother's drug problem. For instance, when Mother was arrested in spring 2013 for failure to appear, police found a urine-filled condom stashed in her underwear. That arrest occurred while Mother was on her way to a drug testing center, "indicating that Mother planned on falsifying

8

her drug test." Then, in spring 2014, Mother tested positive for "Methamphetamine and Amphetamine." Mother testified she had used methamphetamine off-and-on during her pregnancies, further conceding she had used methamphetamine "during at least a portion of the pregnancy." By 2014, Mother was using methamphetamine "pretty regularly" on a daily basis. In a mental health assessment performed on November 30, 2015, Mother stated that she "rel[ied] on drugs to feel normal." Mother testified that her drug problem interfered with her ability to parent Children, as it made her put her own interests first. It also resulted in her frequent incarcerations. This Court has recognized that a drug problem, which interferes with parental abilities, supports a finding of neglect. *In re Doe (2014-15)*, 157 Idaho 765, 771, 339 P.3d 1169, 1175 (2014).

Protective supervision also revealed that Mother showed a disregard for Children's needs. A parent coach assigned to Mother observed Mother's residence "was cluttered, with dirty dishes on the table, cigarettes within reach of the children, and an overall disorganized home." The parent coach also noted that Mother often "failed to attend the session," "cancelled the session," "fell asleep 3 times," and "appeared very tired and lacked attentiveness." At one point, on April 5, 2013, Mother told the parent coach "that she wanted to give up custody of her children." Then, in July 2014, IDHW made an unannounced visit to Mother's apartment, witnessing K.J.M. playing in the dirt with no clothes or shoes, supervised by a man who indicated he had recently been released from jail and was using methamphetamine, and K.M.M. in her play pen, with a diaper that "was unchanged and bulging and almost overflowing with feces." All the while, Mother was home, but asleep. Mother's disregard for Children's needs continued after she lost custody. During visitations with Children in October 2015, Mother (1) used "foul language in front of the children"; (2) failed to bring "any lunch items for the children, notwithstanding her having been told to do so"; and (3) had to be reminded to "change the children's diapers . . . ."

At the time of trial, Mother's financial and housing situations were unstable. Mother testified that she had worked for periods of time at various jobs, but she eventually lost those jobs because of her frequent incarcerations. Before trial, Mother had recently obtained a new job, but she conceded that she was "still not in a position to provide for the children[.]" She further testified that, although she was making efforts to pay child support, she was still "behind thousands of dollars in child support[.]" As to housing at the time of the trial, Mother resided at a transitional house, which was a location where Children would not be permitted to live. This

9

Court has recognized that unstable employment or housing supports a finding of neglect. *In re Doe (2011-03)*, 151 Idaho 498, 501–02, 260 P.3d 1169, 1172–73 (2011).

Finally, as noted, Mother was repeatedly incarcerated. This Court has noted that "evidence of incarceration is competent evidence" establishing neglect. *In re Doe (2015-01)*, 158 Idaho 764, 768, 351 P.3d 1222, 1226 (2015).

Mother acknowledges the above, but she argues her improvement by the time of trial proves she is able to discharge her parental responsibilities. Mother states that, at the time of trial, she (1) was sober; (2) had a job; (3) was engaging in mental health court; (4) had completed in-patient treatment; (5) had paid "substantial amounts" of child support; and (6) had maintained "positive visitation with [Children] until the Court ended that." The magistrate recognized Mother's recent improvements but found they were "too little, too late." Based on the evidence at trial, the magistrate concluded "there clearly is no guarantee that Mother . . . will not relapse or fall into the downside of her 'cycle' (again) or . . . achieve enough stability to provide [Children] with a safe, stable, and healthy home and environment." We find no error in the magistrate's conclusion that Mother's recent and modest improvements were insufficient to overcome her history of demonstrated unfitness. *Cf. In re Doe (2011-18)*, 152 Idaho 644, 649–50, 273 P.3d 685, 690–91 (2012) (finding no error in magistrate's conclusion that father's improvements were "too little, too late"). Indeed, even at trial, Mother conceded her ability to discharge her parental responsibilities required "the Court to put more weight on [Mother's] promises for the future than on [her] conduct in the past[.]"

The magistrate correctly found Mother was unable to discharge her parental responsibilities, which establishes neglect under section 16-1602(28)(b).[4]

3.      Best interests.

Even if neglect is found, termination is proper only if in the best interests of the child. I.C. § 16-2005(1).

> When determining whether termination is in the child's best interests the trial court may consider [1] the stability and permanency of the home, [2] unemployment of the parent, [3] the financial contribution of the parent to the child's care after the child is placed in protective custody, [4] improvement of

---

[4] We note that termination is proper where "[t]he parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child" if termination is in the child's best interests. I.C. § 16-2005(1)(d). That basis of termination substantially overlaps with neglect under section 16-1602(28)(b) and, consequently, is satisfied for the same reasons neglect under section 16-1602(28)(b) is satisfied.

child while in foster care, [5] the parent's efforts to improve his or her situation, and [6] the parent's continuing problems with the law.

*In re Doe (2013-15)*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014) (citation omitted).

These factors show that the magistrate's conclusion that termination was in Children's best interests is supported by substantial, competent evidence. First, Mother testified she lacked stable housing and, at the time of trial, was not living at a place where Children could live. Second, Mother testified that she had worked for periods of time at various jobs, but she eventually lost those jobs because of her frequent incarcerations. Before trial, Mother had recently obtained a new job, but she testified that she was "still not in a position to provide for the children[.]" Third, although Mother was making efforts to pay child support, she testified that she was still "behind thousands of dollars in child support[.]"

Fourth, Children improved while in IDHW's legal custody. When they entered foster care, Children were "unclean." And, K.J.M. had some "flatting on the left side of his head," which, according to IDHW, is an indicator of neglect. Similarly, K.J.M. also had a "flat spot on the back of his head . . . ." K.M.M., who was one-year old, "did not say any words at all[.]" Both Children, "mostly because of their age, were not potty trained [sic], they were both in diapers." Mother conceded that she had "traumatized" Children. Since being placed in foster care, Children have been living in a "very clean and well kept" home. They are "having all their needs met." They have been potty-trained. As IDHW summarized on January 20, 2016, Children "are doing well and [are] very attached to the current foster placement."

Fifth, Mother did little to improve her situation. Throughout protective supervision, Mother continuously violated her case plan. She continued violating her case plans after losing legal custody. She was given approximately two years to get sober, but she failed to do so. As she testified at trial:

> Q. Do you agree that during the period of time the children were in protective supervision, living with you, up until July, 2014, that you were using some of the money that probably should have been used for the kids for your meth?
> A. Yes.
> Q. And that, when using the meth, you were not the kind of parent you should have been?
> A. Yes.
> Q. And that you were putting yourself above the needs of the children?
> A. Yes, I was.

11

Q. Do you agree that during most of the 22 months that the children have been in foster care, as you would use meth and as you would not go to meetings with CLUB, Inc., or as you would not comply with probation, that you were putting your own needs ahead of the children's needs?

A. Yes, I was.

Sixth, Mother had continuing problems with the law, as demonstrated by her frequent incarcerations discussed above. Accordingly, substantial, competent evidence supports the magistrate's termination of Mother's parental rights.

**B.      We decline to reach the additional issues Mother raises.**

Although Mother raises several other issues on appeal, we decline to reach those issues because substantial, competent evidence supports the magistrate's judgment. Therefore, we uphold the magistrate's judgment. *Doe I v. Doe II*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010) ("On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision." (citation omitted)).

## IV.      CONCLUSION

Because substantial, competent evidence supports the magistrate's judgment, the termination of Mother's parental rights is affirmed. We award costs on appeal to IDHW.

Justices EISMANN, W. JONES, HORTON and BRODY, **CONCUR.**