# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46182

In the Matter of: DOE CHILDREN, )
Children Under Eighteen (18) Years of Age. )
------------------------------------------------------------ )   Boise, November 2018 Term
IDAHO DEPARTMENT OF HEALTH AND )
WELFARE, )   Opinion filed: December 19, 2018
)
   Petitioner-Respondent, )   Karel A. Lehrman, Clerk
)
v. )
)
JANE DOE, )
)
   Respondent-Appellant. )

Appeal from the Magistrate Court of the Fifth Judicial District of the State of Idaho, Twin Falls County, Hon. Thomas D. Kershaw, Jr., Magistrate Judge.

The judgment of the magistrate court is <u>affirmed</u>.

Twin Falls County Public Defender, Twin Falls, for Appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent.

_____

HORTON, Justice.

     Jane Doe (Mother) appeals from a judgment of the Twin Falls County magistrate court terminating her parental rights to her three minor children: PG, KG, and BG. Mother argues that the magistrate court abused its discretion in determining that she neglected her children and that it is in the children's best interest to terminate the parent-child relationship. We affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

     This case arises from the termination of Mother's parental rights to her three minor children—PG, KG, and BG—on July 17, 2018. Father previously consented to termination of his parental rights.

     Near the end of February 2017, Mother, who was thirty-five weeks pregnant with BG, went into preterm labor while in jail. She was transported to a hospital but did not have the baby at that time. While at the hospital, she tested positive for methamphetamines. Around that time,

1

KG was hospitalized to receive treatment for Respiratory Syncytial Virus (RSV). Because Mother appeared to be under the influence of drugs when she visited KG in the hospital, the doctor called Child Protective Services over concerns that Mother could not adequately care for her child. After an investigation, the State of Idaho filed a petition to remove PG and KG from their home and they were placed into emergency shelter care on March 1, 2017. The children were three years old and one year old, respectively. BG was then born and placed in emergency shelter care on March 29, 2017, after testing positive for three kinds of opiates. She was four days old when she went into care.

In early April 2017, a detailed case plan was developed and approved by the magistrate court specifying the tasks that Mother needed to accomplish to regain custody of her children. Because Mother continued to use drugs, have other criminal issues, and made only minimal progress on her case plan after eight months, the State filed a petition to terminate her parental rights on November 28, 2017. On January 22, 2018, the magistrate court entered an order approving a permanency plan of adoption for the children in the event that Mother's parental rights were terminated. The foster parents agreed to adopt all three children. A termination trial was held at the end of June 2018, and on July 17, 2018, the magistrate court entered an order terminating Mother's parental rights. A final judgment to that effect was entered on July 24, 2018. Mother timely appealed.

## II. STANDARD OF REVIEW

The Fourteenth Amendment to the United States Constitution protects the fundamental right of parents "to maintain a familial relationship, and to the 'custody, care and control' of their children." *In re Termination of Parental Rights of Doe (2013-17)*, 155 Idaho 896, 902, 318 P.3d 886, 892 (2014) (quoting *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006)). "Therefore, when the State intervenes to terminate the parent-child relationship the requisites of due process must be met." *Doe*, 143 Idaho at 386, 146 P.3d at 652. To satisfy due process, the State must prove by clear and convincing evidence that at least one of the statutorily approved grounds for terminating the relationship is satisfied and that termination is in the child's best interest. *In re Doe (2011-02)*, 151 Idaho 356, 362, 256 P.3d 764, 770 (2011); I.C. § 16-2005(1). "Whether a matter has been proved by clear and convincing evidence is primarily a matter for

the trial court." *Id.* at 363, 256 P.3d at 771 (quoting *In re Doe (2009-19)*, 150 Idaho 201, 203, 245 P.3d 953, 955 (2010)).

> When reviewing a termination decision, this Court reviews the trial court record to determine whether substantial and competent evidence supports the magistrate court's findings of fact and whether the conclusions of law follow from those findings. Substantial and competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.

*Matter of Doe II*, 163 Idaho 399, 401, 414 P.3d 221, 223 (2018) (internal citations and quotations omitted). A court's decision is not an abuse of discretion where it is supported by substantial and competent evidence. *See Woods v. Woods*, 163 Idaho 904, 907, 422 P.3d 1110, 1113 (2018). However, where the trial court's findings must be supported by clear and convincing evidence, "the substantial evidence test requires a greater quantum of evidence . . . than in cases where a mere preponderance is required." *Doe v. Doe (2016-45)*, 162 Idaho 194, 197, 395 P.3d 814, 817 (2017) (quoting *In re Doe*, 143 Idaho at 346, 144 P.3d at 600). "This Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated." *Matter of Doe II*, 163 Idaho at 401, 414 P.3d at 223.

## III.    ANALYSIS

Mother argues that the magistrate court abused its discretion in determining that she neglected her children under Idaho Code sections 16-1602(31) and 16-2002(3)(b) and that it is in the children's best interests to terminate her parental rights. We address these arguments in turn.

## A. Substantial and competent evidence supports the magistrate court's finding that Mother neglected the children.

The magistrate court found that Mother neglected the children under Idaho Code sections 16-1602(31) and 16-2002(3)(b). Mother argues that the magistrate court abused its discretion in determining that she neglected the children. Although Mother does not describe how the magistrate court abused its discretion or recite the abuse of discretion standard in her brief,[1] we take her argument to be that substantial and competent evidence does not support the magistrate court's findings. We disagree.

---

[1] Ordinarily, the failure to attempt to apply the applicable standard of review is fatal to a claim that the trial court erred. *Mortensen v. Berian*, 163 Idaho 47, 53, 408 P.3d 45, 51 (2017). However, given the liberty interests implicated by termination proceedings, we have attempted to discern Mother's basis for claiming that the magistrate court abused its discretion.

3

Idaho Code section 16-2005(1)(b) provides that a parent-child relationship may be terminated if the parent has neglected the child and it is in the child's best interest to terminate the relationship. Idaho Code section 16-2002(3) states that "neglected" means conduct as defined in Idaho Code sections 16-1602(31) or 16-2002(3)(b). Substantial and competent evidence supports the magistrate court's finding that Mother's conduct amounts to neglect of the children under both statutes defining neglect; therefore, the magistrate court did not abuse its discretion.

1.  <u>Substantial and competent evidence supports the magistrate court's finding that Mother neglected the children as defined by Idaho Code section 16-1602(31).</u>

The magistrate court found that Mother neglected the children under Idaho Code section 16-1602(31) because she failed to provide the "necessary care, control or subsistence for the children." Substantial and competent evidence supports this finding.

Under Idaho Code section 16-1602(31)(a), a "neglected" child is one "without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents . . . or their neglect or refusal to provide them . . . ." "This Court has recognized that a drug problem, which interferes with parental abilities, supports a finding of neglect." *Idaho Dep't of Health & Welfare v. Doe (2016-32)*, 161 Idaho 754, 760, 390 P.3d 1281, 1287 (2017). We have also "recognized that unstable employment or housing supports a finding of neglect." *Id.* Further, "[t]his Court has noted that 'evidence of incarceration is competent evidence' establishing neglect." *Id.* at 760–61, 390 P.3d at 1287–88 (quoting *Idaho Dep't of Health & Welfare v. Doe (2015-01)*, 158 Idaho 764, 768, 351 P.3d 1222, 1226 (2015)).

This case began as a result of a doctor calling Child Protective Services because Mother appeared to be on drugs and incapable of caring for her children. As a result of that call, Mother and her eldest child, PG, were tested for drugs—both tested positive for methamphetamine. Mother has admitted to relapsing on drugs three or four times in the past two years. In addition, the magistrate court found that although Mother had approximately fifteen months to obtain stable housing and employment before the termination trial, Mother had obtained neither. Further, not only was she incarcerated several times before the children were placed in foster care, she was also in and out of jail on multiple occasions during the fifteen months that she was given to work on her case plan before her parental rights were terminated. Indeed, Mother was serving time in jail at the time of the termination trial. She is still serving that sentence and will

be incarcerated for several months, at minimum. As the magistrate court noted, Mother's optimistic estimate is that she may be in a position to care for the children in two years.

These facts constitute substantial and competent evidence that Mother neglected her children as defined by Idaho Code section 16-1602(31). Therefore, the magistrate court did not abuse its discretion in finding that the children were neglected under that statute.

2.     <u>Substantial and competent evidence supports the magistrate court's finding that Mother neglected the children as defined by Idaho Code section 16-2002(3)(b).</u>

The magistrate court found that Mother neglected the children under Idaho Code section 16-2002(3)(b) because "she ha[d] not completed, or even made a significant start on, her case plan" since she had agreed to it and the children had been in the custody of IDHW for the previous year and a half. Substantial and competent evidence supports the magistrate court's finding of neglect on these grounds.

Under Idaho Code section 16-2002(3)(b), a child is "neglected" where:

> The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:
>     (i) The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and
>     (ii) Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

The statutory requirements for a finding of neglect under Idaho Code section 16-2002(3)(b) are satisfied in this case.

Mother was notified by a Child Protective Act Summons filed on March 2, 2017, that:

> [T]here shall be a rebuttable presumption that if a child is placed in the custody of IDHW and was also placed in care out of the home for a period not less than fifteen (15) out of the last twenty-two (22) months from the date of Adjudication, the IDHW shall initiate a Petition for Termination of Parental Rights.

IDHW took custody of PG and KG on March 1, 2017, and it took custody of BG on March 29, 2017. In April 2017, Mother agreed to a case plan that set forth a number of tasks for her to accomplish before she could regain custody of the children. The magistrate court found that "[a]s of the time of trial, [Mother] had been given about 15 months to work on these tasks." It also found that:

> [S]he had made almost no progress on the major case plan tasks like obtaining stable housing and employment, completing drug treatment, having a history of negative drug tests, getting mental health treatment and an anger assessment, completing parenting classes and applying what she learned, meeting the medical

5

and dental needs of the children and generally staying out of criminal trouble. It now appears that she will be in jail for at least six to nine months and would, if she is successful in the retained jurisdiction program, then be back on felony probation. She would need to begin again the process of working on her case plan.

Simply stated, Mother did not comply with her case plan.

Regarding the next two statutory requirements: IDHW took custody of the children in March 2017, the termination trial occurred on June 26, 2018, and the magistrate court ordered termination of Mother's parental rights on July 17, 2018. Thus, the children were in the custody of IDHW for fifteen of the most recent twenty-two months at the time that the magistrate court ordered termination of Mother's parental rights and reunification had not been accomplished by the last day of the fifteenth month. As a result, substantial and competent evidence supports the magistrate court's finding that Mother neglected the children as defined by Idaho Code section 16-2002(3)(b).

Having concluded that substantial and competent evidence supports the magistrate court's finding that Mother neglected the children under both Idaho Code section 16-1602(31) and section 16-2002(3)(b), we next consider the best interests of the children.

**B. Substantial and competent evidence supports the magistrate court's finding that termination of Mother's parental rights is in the children's best interest.**

"Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship." *In Interest of Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). Mother argues that the magistrate court abused its discretion in determining that termination is in the children's best interest because termination of her parental rights may not provide permanency that is in their best interest. The magistrate court found that termination is in the children's best interest because Mother needs at least two more years before she may be in a position to care for the children and their need for permanency outweighs Mother's parental rights in this case. Substantial and competent evidence supports the magistrate court's finding.

"The best interest analysis considers the reality that children need 'stability and certainty.' " *In Interest of Doe (2018-24)*, 164 Idaho at 148, 426 P.3d at 1248 (quoting *In re Doe (2013-15)*, 156 Idaho 103, 112, 320 P.3d 1262, 1271 (2014)).

When determining whether termination is in the child's best interests the trial court may consider the stability and permanency of the home, unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, improvement of [the] child while in foster

6

care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law.

*Id.* at 147–48, 426 P.3d at 1247–48 (quoting *In re Doe (2013-15)*, 156 Idaho at 111, 320 P.3d at 1270). Each of these factors supports the magistrate court's determination that termination of Mother's parental rights was in the children's best interests.

The magistrate court found that at the earliest, Mother may be able to care for her children two years from July 2018 due to continued legal problems and instability. That would leave the children in foster care for more than three years before Mother possibly could care for them. Mother has failed to obtain stable housing or employment since IDHW took custody of the children and has not provided for the children financially—at the time of the termination trial, Mother stated that she was $2,000 in arrears on child support. She was incarcerated at that time and thus was unemployed.

Mother's case plan required her to improve her situation by, among other things, obtaining stable, drug-free housing and stable employment, completing parenting skills courses and applying those skills, completing mental health and anger assessments and following all recommendations, and participating in the children's medical, dental, and therapy appointments and following all recommendations. Aside from attending seven of the children's 706 medical and therapy appointments since they went into foster care, Mother has done none of these things. Further, after IDHW took custody of the children, Mother continued to have problems with the law and missed visits with the children due to being in and out of jail. She is currently incarcerated after being discharged from drug court for associating with an inmate.

All three children have improved since going into foster care. When IDHW initially took the children into custody, PG, who was three years old, tested positive for methamphetamine. Although Mother also tested positive for methamphetamine at that time, she refused to accept responsibility for exposing PG to drugs. The magistrate court found that when PG first went into foster care, she was significantly delayed in her speech, motor skills, social interaction, and ability to process emotions. She had a lazy eye, needed extensive dental work, was on medication for ADHD, and was hyperactive. She had serious abandonment issues and would gorge on food. The foster mother also testified that PG had recurring nightmares, typically five or six a night, and that she would wake up screaming and begging foster mother to hold her.

Foster mother testified in the fifteen months that PG was in her care leading up to the termination trial, PG has improved dramatically. She is more at peace and is able to eat normally.

7

When PG first went into care, her speech therapist could only understand ten percent of what PG said; now she can understand eighty-five percent of what she says. PG's abandonment issues have improved dramatically, and she rarely has nightmares. At first, PG needed speech therapy, occupational therapy, feeding therapy, and counseling. Now, PG only needs counseling and speech therapy. In addition to taking PG to her appointments, foster mother works with PG for at least an hour a day at home. Further, both foster mother and the social worker assigned to the child protection case testified that PG is thriving with her foster parents. Regarding PG, the social worker testified that "the change has been remarkable. I've noticed recently a calmness in [PG]." "[S]he's happy. She's more self-assured. She's more self-confident. She's able to regulate herself. She is able to listen to direction . . . so yes, in a positive way I've seen positive growth in her."

The magistrate court found that KG was especially affected by eating problems when she went into care. In addition, she was isolated and did not want to be touched, was very delayed in her motor skills, and had problems with vision and social skills. She needed substantial emotional and medical assistance. The social worker testified that "[i]t was evident that [KG] suffered from severe neglect." She was diagnosed with reactive attachment disorder and is going to require extensive counseling to treat it. She was also receiving daily injections of growth hormone because she was born prematurely and previously did not receive the treatments she needed. The foster mother testified that at fourteen months, KG was functioning at the level of a six-month-old. "She was not cruising along furniture. She was not walking. She was not even doing multisyllabic babbling . . . ." When she went into care, KG needed treatment for auditory processing, occupational therapy, feeding therapy, speech therapy, and counseling. In addition, she may need to go to Salt Lake City for additional therapies in the future. Foster mother testified that she and her husband spend two to three hours a day with KG working on basic skills, and that although KG's motor skills are still severely delayed, she has made substantial progress. The magistrate court found that although she suffers from the effects of severe neglect, KG is now "talking, walking and seems happy and secure."

The magistrate court found that BG suffered from withdrawals from drugs when she entered foster care at four days old. Effects of the withdrawals caused BG to be unable to turn her head for a time after she was born. As a result, her head was misshapen and she had to wear a helmet. The treatment was effective and she no longer needs the helmet. The magistrate court

also found that although exposure to drugs in the womb may have caused damage to BG's eyes, she "seems to be above her age level in development at this time."

These facts establish that Mother has not obtained employment or safe housing, quit taking drugs, stayed out of criminal trouble, or attempted to improve her situation since the children went into foster care—all of which favor a finding that termination is in the children's best interest. They also establish that the children have improved significantly with the foster parents who have agreed to adopt all three of them. Thus, we conclude that substantial and competent evidence supports the magistrate court's finding that termination of Mother's parental rights is in the children's best interest.

## IV.     CONCLUSION

The magistrate court did not abuse its discretion by terminating Mother's parental rights. Accordingly, we affirm the magistrate court's judgment.

Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**