IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 47466

| | |
|---|---|
| In the Interest of:  John Doe I,<br>A Child Under Eighteen (18) Years of Age.<br>------------------------------------------------------<br>STATE OF IDAHO, DEPARTMENT OF<br>HEALTH AND WELFARE,<br><br>    Petitioner-Respondent,<br><br>v.<br><br>JANE DOE (2019-32),<br><br>    Respondent-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Boise, January 2020 Term

Opinion Filed: January 31, 2020

Karel A. Lehrman, Clerk

---

Appeal from the Magistrate Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Benjamin D. Harmer, Magistrate Judge.

Decree terminating parental rights is affirmed.

Marilyn Paul, Twin Falls Public Defender, Twin Falls, for appellant.

Lawrence G. Wasden, Idaho Attorney General, Twin Falls, for respondent.

---

BRODY, Justice.

Jane Doe (Mother) appeals a Twin Falls County magistrate court's decree terminating her parental rights. Both Mother and her child (Child) tested positive for methamphetamine when he was born. Law enforcement declared that Child was in imminent danger, and the Idaho Department of Health and Welfare (IDHW or Department) assumed temporary custody. A case plan for reunification was adopted, focusing on Mother's substance abuse and mental health issues, and on obtaining safe and stable housing. Mother made no progress on her case plan, and was subsequently incarcerated. IDHW petitioned to terminate Mother's paternal rights. After a termination hearing in September 2019, where Mother argued that her recent sobriety and improved lifestyle justified the denial of the Department's petition, the magistrate court entered a decree terminating Mother's parental rights based on Mother's neglect and the best interests of

1

the child. We affirm the magistrate court's decree terminating Mother's parental rights.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Child was born on July 12, 2018, and has spent the entirety of his young life in foster care. When Child was born, both he and Mother tested positive for methamphetamine. Upon questioning by law enforcement, Mother admitted to using methamphetamine two weeks before Child's birth. Child is Mother's fourth child. At the time of Child's birth, Mother's two middle children were both living in foster care. Mother's oldest child died from natural causes at thirteen months of age. After Mother and Child tested positive for methamphetamine, the matter was referred to IDHW. The Department placed Child into emergency shelter care after law enforcement declared that he was in imminent danger. At the emergency shelter care hearing that followed, Mother stipulated to IDHW retaining temporary custody of Child. Child was placed in the same foster home with his older half-sister.

Shortly after Child was placed in foster care, the magistrate court ordered IDHW to prepare a written case plan specifying the tasks that Mother needed to accomplish to regain custody. Given Mother's history of substance abuse and housing problems, the case plan emphasized sobriety and obtaining safe and stable housing. Specifically, the case plan required Mother to: (1) complete a substance abuse assessment within thirty days of adopting the plan; (2) submit to IDHW for random drug testing; (3) complete a mental health evaluation and participate in individual counseling; (4) obtain safe and stable housing for herself and her child; (5) demonstrate the ability to financially provide for her child; and (6) address her legal issues to ensure she would be available to parent her child.

After the case plan was adopted, Mother made no progress toward meeting the requirements and rarely visited Child. Within a few weeks of Child's birth, Mother left the state to help babysit for her niece in California. When she went to California, Mother knowingly gave up visitation opportunities with Child and had no contact with him for three months. When Mother returned to Idaho in November 2018, she had warrants out for her arrest for possession of a controlled substance and injury to a child. Mother was arrested and incarcerated on November 28, 2018. The record shows that Mother continued to use controlled substances until she was incarcerated.

In December 2018, IDHW filed a petition to terminate Mother's parental rights. In February 2019, the magistrate court entered an order approving adoption as the permanency plan

for Child in the event that Mother's parental rights were terminated. Mother was released from jail in March 2019 and started a drug court program the following month. After her release from jail, Mother moved in with her sister and started visiting Child regularly. While Mother made progress in drug court, she struggled to find employment. By the end of June 2019, she was still unemployed.

The magistrate court held a termination hearing in September 2019. IDHW presented evidence that Mother failed to complete her case plan. Specifically, IDHW demonstrated that—despite a provision in her case plan requiring her to begin drug treatment thirty days after adopting her July 2018 case plan—Mother only began drug treatment after her release from jail in March 2019. Further, IDHW highlighted Mother's struggles with employment and housing. Prior to her incarceration in November 2018, Mother failed to provide IDHW with proof of employment or housing. One of her case managers testified that due to Mother's trip to California shortly after Child's birth, Mother had failed to make any progress on her case plan. After Mother's incarceration, she began drug court treatment but still failed to provide her case manager with proof of employment or housing. Mother reported to her case manager that she started working in July 2019, but failed to provide any proof of employment until the day of the termination hearing. Regarding housing, Mother spent time living with both her sister and mother. At the hearing, Mother stated that she was living with her mother, and sharing a room with her sister. However, prior to the hearing when her case manager called to schedule a home visit to see where Mother was living, Mother did not respond. As a result, no home visit was ever conducted. Beyond employment and housing, Mother failed to provide proof that she had completed a mental health assessment until the day of her termination hearing. Ultimately, both of Mother's case managers recommended that termination of parental rights and adoption would be in Child's best interests.

Child's foster mother—who recently adopted Child's older half-sister—testified about his growth, development, and life in foster care. Since coming into foster care, Child received treatment for involuntary leg movement and stomach problems. Doctors attributed these problems to the drugs in Child's system at birth. Initially, Child developed slowly, and was underweight and small for his age. Gradually, and with the help of an endocrinologist, Child's growth development, speech, and motor skills have all improved. In his foster home, Child loves interacting with his half-sister and the other children living there. Child and his half-sister have a

3

normal sibling relationship. Child's foster mother testified that she was interested in adopting Child if the magistrate court found grounds for termination of parental rights.

In her testimony, Mother admitted that she used drugs during her pregnancy with Child, and had not been a good mother prior to her recent sobriety. Further, she admitted that her children would not have survived on the parenting she provided prior to IDHW taking custody. However, Mother testified that with the help of medication and sobriety, she focused on her job and maintained consistent employment. During her testimony, Mother provided proof of employment and a mental health evaluation for the first time since starting her case plan. Mother further testified that even though she has never lived on her own, she planned to get her own place as soon as she could afford it. In final remarks to the magistrate court, Mother testified that despite her past, she loves her children and is trying to straighten out her life.

The magistrate court entered an order terminating Mother's parental rights. In the order, the magistrate court commended Mother's recent sobriety and employment progress. However, the magistrate court concluded that her efforts were "simply too little, and too late[.]" The magistrate court determined that IDHW established two separate grounds for termination by clear and convincing evidence. First, the magistrate court determined that IDHW established statutory grounds for termination under Idaho Code section 16-1602(31), neglect through conduct or omission of the parent. Second, the magistrate court determined that IDHW established statutory grounds for termination under Idaho Code section 16-2002(3)(b), failing to comply with a case plan and failing to timely reunify with Child. Further, the magistrate court concluded that terminating Mother's parental rights was in Child's best interests. The magistrate court issued a final decree terminating parental rights, and Mother timely appealed.

## II. STANDARD OF REVIEW

Idaho Code section 16-2005(1) provides that "a court may terminate parental rights if it finds that doing so is in the best interests of the child and that at least one of five grounds for termination is satisfied." *Matter of Doe II*, 165 Idaho 199, 202, 443 P.3d 213, 216 (2019) (quoting *In re Doe (2014-23)*, 157 Idaho 920, 923, 342 P.3d 632, 635 (2015)). "The trial court must find that grounds for terminating parental rights have been proven by clear and convincing evidence." *Id.* (quoting *Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010)). The clear and convincing evidence standard is met when there is "evidence indicating that the thing to be proved is highly probable or reasonably certain." *Id.* (quoting *In re*

4

*Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006) (internal brackets omitted)).

On appeal, this Court does not reweigh the evidence to determine if it was clear and convincing. *Id.* This Court will not disturb the magistrate court's decision to terminate parental rights where there is "substantial, competent evidence in the record to support the decision." *Id.* "Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *In re Doe*, 143 Idaho 343, 345–46, 144 P.3d 597, 599–600 (2006) (internal quotation marks omitted)). "This Court will indulge all reasonable inferences in support of the trial court's judgment." *Id.* (quoting *Dep't of Health & Welfare v. Doe (2013-15)*, 156 Idaho 103, 106, 320 P.3d 1262, 1265 (2014)).

### III.    ANALYSIS

Mother argues that the magistrate court erred in determining that she neglected Child under Idaho Code section 16-1602(31) and that it is in Child's best interests to terminate her parental rights. We address these arguments in turn.

### A. The magistrate court's determination of neglect is supported by substantial and competent evidence.

Mother challenges the magistrate court's determination of neglect under Idaho Code section 16-1602(31)(a). Mother bases her argument on her progress with her case plan since being released from jail at the end of March 2019. Essentially, she contends that the magistrate court erred in concluding that she neglected Child because evidence of her sobriety, employment, improved mental health, and housing demonstrated that she can provide for the well-being of Child. We disagree with Mother's argument.

Under Idaho Code section 16-1602(31)(a), a "neglected" child is one "[w]ho is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them[.]" I.C. § 16-1602(31)(a). This Court has recognized that a drug problem that interferes with parenting supports a determination of neglect. *Idaho Dep't of Health & Welfare v. Doe (2016-32)*, 161 Idaho 754, 760, 390 P.3d 1281, 1287 (2017). "We have also recognized that unstable employment or housing supports a finding of neglect." *Id.* Further, evidence of incarceration is competent evidence establishing neglect. *Id.* at 760–61, 390 P.3d at 1287–88.

In reaching its conclusion that Mother neglected Child, the magistrate court relied on evidence of Mother's drug addiction, trip to California, subsequent incarceration, and  inability

5

to provide a safe and stable home for Child. First, while Mother appears to argue her recent sobriety refutes the magistrate court's determination, her drug use is the reason this case was brought. Child was born with drugs in his system because Mother smoked methamphetamine at least two weeks before his birth. Mother smoked methamphetamine while she was pregnant despite the fact that she was on a separate case plan—for her older child—that required sobriety. Further, after agreeing to the terms of the case plan implemented in this case which also emphasized sobriety, Mother continued to use drugs up until her incarceration in November 2018. Before she was incarcerated, Mother chose drug use and travel to California over completing her case plan to regain custody of her infant son.

Second, Mother's incarceration itself is evidence of neglect. *See Doe*, 161 Idaho at 760, 390 P.3d at 1287. When Mother returned from California in November 2018, she learned that she had multiple warrants out for her arrest. In the four months that she was incarcerated, she did not visit or see Child.

Third, Mother's spotty employment and housing record is evidence of neglect. *See id.* at 760–61, 390 P.3d at 1287–88. After her release from jail in March 2019, Mother did not find stable employment until the end of July 2019. Prior to that, she worked for only one day between March 2019 and the end of July 2019. At the time of the termination hearing Mother was working steady hours at a convenience store and gas station, but she had still only been employed for two of the fourteen months since Child's birth. Further, Mother's housing history was also unstable. When she went to California just after Child's birth, her case worker did not know where she was living or what kind of housing she had. After being released from jail, she moved in with her sister, until an alleged misunderstanding caused Mother to abruptly move out. Upon leaving her sister's house, she moved in with her own mother. At her mother's house, she did not have her own room that she could share with Child. Although Mother testified that her stay at her Mother's house was temporary and that she wanted to find her own place in "the next couple [of] months," she later admitted that it would be difficult to find her own place in her price range given the taxes and child support she was paying. All of these facts constitute substantial and competent evidence that support the magistrate court's determination that Mother neglected Child pursuant to Idaho Code section 16-1602(31)(a). Accordingly, the magistrate court did not err in concluding that Mother neglected Child.

6

**B. The magistrate court's determination that termination of parental rights was in Child's best interests is supported by substantial and competent evidence.**

Mother argues that the magistrate court erred when it determined that terminating Mother's parental rights was in Child's best interests. We disagree.

Similar to her neglect argument, Mother's best interests argument is based on improvements in her behavior and lifestyle since being released from jail in March 2019. Mother asserts that she is continuing to participate in drug court and mental health therapy, and that she has maintained sobriety since her incarceration in November 2018. Further, Mother asserts that she is working full time, has the support of her mother and sister, and that she has a close emotional connection with Child. While Mother demonstrated that she started the path to recovery, the magistrate court did not err in concluding that terminating Mother's parental rights was in the best interests of Child.

After finding a statutory ground for termination, the magistrate court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. I.C. § 16-2005(1). "The best interest analysis considers the reality that children need stability and certainty." *Matter of Doe Children*, 164 Idaho 486, 491, 432 P.3d 35, 40 (2018) (internal quotation marks omitted). In reviewing the magistrate court's determination of the best interests of the child, "this Court does not reweigh evidence, but defer[s] to the trial court's unique ability to accurately weigh the evidence and judge the demeanor of the witnesses and take into account the trial court's superior view of the entire situation." *Doe v. Doe*, 148 Idaho 243, 246, 220 P.3d 1062, 1065 (2009) (internal quotation marks omitted).

Here, the magistrate court focused on Child's need for stability and certainty in his home environment. The magistrate court concluded that "stability and certainty are necessary [for Child] to continue making developmental progress." Although Mother started a path to recovery, the magistrate court considered these efforts "too little, and too late for [Child]'s sake." While Mother does not specifically challenge any of these findings on appeal, she appears to argue that the magistrate court erred in this conclusion because it did not place enough emphasis on her recent sobriety, employment, and lifestyle changes.

"When considering the best interests of the child, a trial court may consider numerous factors." *Idaho Dep't of Health & Welfare v. Doe*, 162 Idaho 236, 244, 395 P.3d 1269, 1277 (2017) (internal citations omitted). A parent's ability to change his or her conduct to assume parental responsibilities is a factor the magistrate court may consider, but it is only one of many

7

that goes into the best interests analysis. *Matter of Doe*, 164 Idaho 511, 516, 432 P.3d 60, 65 (2018). In its order, the magistrate court commended Mother's efforts to maintain sobriety after her incarceration. Despite this progress, the magistrate court concluded that Mother could not offer Child the stability he needs in his life at the time of the termination hearing. At the time of the hearing, Mother had only maintained sobriety for five months after being released from jail. Five months sober is an accomplishment, but after a decade of drug addiction, on-going sobriety is no guarantee. Further, Mother admitted that she would not be able to complete drug court for at least another year.

Similarly, Mother's progress in employment and housing did little to advance the best interests of Child. Mother did find employment and housing with family members, but the magistrate court still concluded that she could not provide a safe and secure home environment and be a stable caregiver for Child. Regarding housing, Mother bounced between her sister and mother's house, and did not have her own room to share with Child. Furthermore, between work, drug court appearances, counseling, drug testing, and probation appointments, Mother had a full schedule attending to her own needs and efforts to maintain sobriety.

This Court has previously held that the trial court does not err when it finds that a parent's recent improvement is outweighed by other factors in the best interests analysis. *Doe*, 164 Idaho at 516, 432 P.3d at 65. In this case, Child has spent his entire life in foster care. The magistrate court appropriately concluded, based on clear and convincing evidence, that Child's best interests and need for stability could not wait for Mother to finish her case plan or have the time she needs to devote to Child. The magistrate court's conclusion was supported by substantial and competent evidence, and, therefore, there is no basis for asserting error.

## IV.   CONCLUSION

In light of the foregoing, we affirm the magistrate court's decree.


Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.