# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46458

| | |
|---|---|
| In the Matter of: Jane Doe II, A Child Under Eighteen (18) Years of Age. | |
| JOHN and JANE DOE I. | Boise, February 2019 Term |
| Petitioners-Respondents, | Opinion Filed: June 13, 2019 |
| v. | |
| JOHN DOE, | Karel A. Lehrman, Clerk |
| Respondent-Appellant. | |

Appeal from the Magistrate Court of the First Judicial District of the State of Idaho, Bonner County. Barry E. Watson, Magistrate Judge.

The amended judgment of the magistrate court is affirmed.

Catherine E. Enright, Bonner County Public Defender's office, Sandpoint, for appellant.

Jeremy P. Featherston, Featherston Law, Sandpoint, for respondents.

_____

BRODY, Justice.

This is an expedited appeal from a Bonner County magistrate court's termination of the parental rights of John Doe (Father) to his minor child (IW). John and Jane Doe I, the maternal grandmother and step-grandfather (collectively "Guardians"), filed a petition to adopt IW and terminate Father's parental rights. Guardians alleged that Father abandoned IW and that termination was in her best interests. The magistrate court granted the Guardians' petition, and Father timely appealed. We affirm the magistrate court's amended judgment because there is substantial and competent evidence to support its findings.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

IW is eight years old. At the time of IW's birth, Father owned a house in Vallejo, California, in which Father, Mother, IW, and IW's maternal half-sister, MW, resided. Father and Mother were regular drug users at the time of IW's birth.

Grandmother was called upon to provide care for IW after she was born. Late one evening, Grandmother received a call from an unknown person stating that IW's parents had left IW with her. Grandmother immediately drove to Vallejo and retrieved the infant. Neither parent was present when Grandmother took custody of IW. IW began residing with Guardians full time. Shortly thereafter, IW's older half-sister, MW, who is also the granddaughter of Grandmother, came to live with them.

When IW was about six months old, Grandmother filed for legal guardianship of both IW and MW, in Solano County, California, listing step-grandfather as an additional guardian. The California court granted the petition over Father's objection. When the guardianship was granted, the California court issued a written explanation of duties and obligations for Guardians, which they acknowledged by signing the document. Central to this case, the document contained a provision which stated that Guardians did not have the right to change IW's residence to a place outside of California without the court's permission.

About two months after the California court granted Grandmother's guardianship petition, Father was arrested on charges relating to sexual contact with MW. Following two jury trials, both resulting in hung juries, Father pleaded guilty to a Lewd Act upon a Child and was sent to prison.

While incarcerated, Father filed for divorce from Mother. Custody of IW was not addressed in the divorce decree as it was "previously established" in the Guardians' California guardianship case. Mother testified at the hearing on the Guardians' petition at issue here that Mother and Father's relationship was tempestuous. Mother accused Father of domestic violence, testifying that he threw her down steps and broke her arm. Mother also testified that she pulled a shotgun on Father upon finding out that he was abusing her daughter, MW.

Father was released from prison and placed on parole on March 31, 2014, when IW was three years old. There was no contact between Father and IW between the time of his release from prison and the time of the termination hearing except that Father claims to have sent a drawing of angel wings to IW and MW at the Guardians' last known address. The record does not contain any evidence establishing whether the drawing was received.

In November 2015, Guardians moved with IW to Priest River, Idaho. There is no dispute that Guardians did not inform the California court that they were moving, nor did

2

they seek permission from the court prior to moving, as was required by the terms of the guardianship. Father was also not informed that Guardians were moving to Idaho with IW.

In March of 2016, Father sold his Vallejo home and received roughly $68,000 in proceeds. From that money, he paid about $20,000 in back taxes and other unspecified amounts to various family members. He also used a portion of the proceeds ($1,500) to hire a private investigator in California to locate IW. When Father learned that Guardians had moved, he paid another investigator in Idaho $1,500 to locate IW.

Father and other witnesses testified at the termination hearing that Father has lived at many different addresses since IW was born. He is currently residing in a drug and alcohol program facility that houses up to forty parolees in Woodland, California. According to his parole officer, Father is not in the substance abuse program but requested to stay there because he had no other place to live. Father testified that he is currently unemployed but receives Social Security disability benefits in the amount of $910 per month. Father testified that he has been receiving benefits since he was fifteen. No evidence was offered as to the nature of his disability but his parole conditions state that Father has a documented history of mental illness. Father has never paid nor offered to pay child support.

In October of 2016, the Solano County Superior Court issued an order requiring the Guardians to appear in court and show cause why sanctions should not be imposed against them for their failure to seek court permission to move IW and MW to Idaho. A subsequent order to show cause was issued requiring the Guardians to either return the girls to California or institute a guardianship action in Idaho immediately. After receiving the show cause orders, Guardians sought to register the guardianship in Idaho. The guardianship was successfully registered in Idaho, and the California guardianship was terminated in November 2017.

In May 2017, during the time that the guardianship registration issue was being addressed, Guardians filed the Petition for Adoption and Termination of Parental Rights which is at issue. Father objected to the petition, and a two-day trial was held. On June 6, 2018, the magistrate court entered an Order finding that Father had abandoned IW and that termination was in her best interests. Judgment was entered, and Father filed a timely notice of appeal.

## II.    ISSUES ON APPEAL

3

A. Whether the magistrate court erred in finding that Father willfully abandoned his child without just cause.

B. Whether the magistrate court erred in finding that termination of Father's parental rights was in the best interests of the child.

## III. STANDARD OF REVIEW

"Pursuant to Idaho Code section 16-2005(1), a court may terminate parental rights if it finds that doing so is in the best interests of the child and that at least one of five grounds for termination is satisfied." *In re Doe (2014–23)*, 157 Idaho 920, 923, 342 P.3d 632, 635 (2015). "The trial court must find that grounds for terminating parental rights have been proved by clear and convincing evidence." *Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010). The clear and convincing evidentiary standard is met when there is "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain." *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006) (quoting BLACK'S LAW DICTIONARY 577 (7th ed. 1999)).

On appeal, "the appellate court does not reweigh the evidence to determine if it was clear and convincing." *Doe*, 149 Idaho at 210, 233 P.3d at 141. This Court "will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision." *Doe v. Doe (In re Doe)*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010). "Substantial, competent evidence is such 'evidence as a reasonable mind might accept as adequate to support a conclusion.' " *In re Doe*, 143 Idaho 343, 345–46, 144 P.3d 597, 599–600 (2006) (quoting *Folks v. Moscow Sch. Dist. No. 281*, 129 Idaho 833, 836, 933 P.2d 642, 645 (1997)). "[T]his Court will indulge all reasonable inferences in support of the trial court's judgment." *Dep't of Health & Welfare v. Doe (2013–15)*, 156 Idaho 103, 106, 320 P.3d 1262, 1265 (2014) (quoting *In re Aragon*, 120 Idaho 606, 608, 818 P.2d 31, 312 (1991)).

## IV. ANALYSIS

Guardians sought to terminate Father's parental rights on the basis that Father abandoned IW. A court may grant an order terminating parental rights where it finds: (1) at least one of the five bases for termination has been proven by clear and convincing evidence; and (2) termination is in the best interest of the child. I.C. § 16-2005. One of the five bases for termination is abandonment. I.C. § 16-2005(1)(a). Section 16-2002(5) defines the term "abandoned" as the willful failure to maintain a normal parental relationship for a period of six months in situations where a grandparent is seeking termination to adopt the child:

4

"Abandoned" means the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. . . . [W]here termination is sought by a grandparent seeking to adopt the child, the willful failure of the parent to maintain a normal parental relationship as provided herein without just cause for six (6) months shall constitute prima facie evidence of abandonment.

I.C. § 16-2002(5).

"No hard-and-fast rule controls the question of whether a parent has abandoned his or her child; instead, '[e]ach case must be decided on its own particular facts.'" *In re Adoption of Doe*, 143 Idaho at 191, 141 P.3d at 1060 (alteration in original) (quoting *Crum v. Dep't of Health & Welfare*, 111 Idaho 407, 409, 725 P.2d 112, 114 (1986)). A petitioner bears the burden of persuasion to show by clear and convincing evidence that the parent abandoned his child, which "includes a showing that the defendant parent is without just cause for not maintaining a normal relationship." *Id.* at 192, 141 P.3d at 1061.

If the petitioner meets his burden, the parent must present evidence that there is just cause for his failure to maintain the parental relationship. *Id.* "If the trier of fact finds that there are no valid defenses or 'just causes,' then the petitioning party has met the burden of persuasion." *Id.* "In making this determination a court should consider evidence of the logistical and financial difficulties associated with maintaining the parental relationship." *In re Doe (2013-30)*, 156 Idaho 532, 537, 328 P.3d 512, 517 (2014).

## A. The magistrate court did not err in finding that Father willfully abandoned his child without just cause.

Father concedes that Guardians have shown that he has not maintained a normal parental relationship with IW for at least a period of six months. However, Father argues that the magistrate court's finding that he "willfully" failed to maintain a normal parental relationship is not supported by substantial and competent evidence and that the magistrate court did not consider evidence of just cause for his failure to maintain a normal parental relationship.

Pursuant to Idaho Code section 16-2002(5), abandonment may occur in situations where a parent willfully fails to provide "reasonable support or regular personal contact" with his child. As the disjunctive "or" indicates, "a finding that a parent has failed to provide reasonable support without just cause, by itself, establishes abandonment." *Matter of Doe II*, 163 Idaho at 7, 407 P.3d at 594 (2017). The key inquiry regarding "willfulness" is whether a parent is capable of maintaining a normal relationship with the child. *Doe v. Doe (In re Doe)*, 155 Idaho 505, 508,

314 P.3d 187, 190 (2013). As we have stated, "[f]or one to willfully fail to do something, he or she must have the ability to do it." *Doe I v. Doe II (In re Doe)*, 148 Idaho 713, 716, 228 P.3d 980, 983 (2010).

Father's arguments in this case closely resemble the arguments we recently addressed in *Doe I v. Doe II (2016-23)*, 161 Idaho 532, 387 P.3d 785 (2016). There, a mother allowed her two children to live with their grandparents. *Id.* at 534, 387 P.3d at 787. The grandparents were later awarded guardianship and filed a petition to terminate the mother's parental rights. *Id.* The magistrate court found that the mother failed to provide financial support to the children, help the grandparents with the cost of caring for the children, or help with expenses of any kind, despite mother's ability to provide at least some reasonable support. *Id.* at 534, 536, 387 P.3d at 787, 789. As a result, the magistrate court determined that clear and convincing evidence established that the mother abandoned her children by failing to provide reasonable support without just cause. We affirmed, highlighting the fact that the mother had some financial resources, yet did not support the children in any way, except for buying "some toys, [and] little stuff." *Id.*

Here, there is no evidence that Father ever supported IW financially. When asked whether Father had ever paid child support for IW, he responded, "No, because I was never asked to." The magistrate court considered Father's justification for his failure to provide support and rejected it, noting that it "fell flat." The court found that despite his time in prison, Father had financial resources available after the sale of his Vallejo home and that he was receiving Social Security disability benefits. Nevertheless, he failed to make even a single phone call to California child support services or the Social Security Administration to see what he could do to support his daughter. The magistrate court further stated that, although Father subjectively loves IW, "she has not been a consistent priority for him." As a result, it concluded that, "[F]ather's conduct and omissions constitute a willful abandonment of [IW] and it has continued for much longer than the 6-month statutory prima facie test. His efforts to initiate a relationship with [her] are too little and too late."

We do not re-weigh the evidence on appeal. There is substantial and competent evidence to support the magistrate court's conclusion that Father willfully abandoned IW without just cause. Although the magistrate court further held that Father's lack of personal contact also established abandonment, we need not address that issue "because the lack of reasonable

6

support, by itself, establishes abandonment." *Doe I v. Doe II (2016-23)*, 161 Idaho at 536, 387 P.3d at 789 (2016).

**B.     The magistrate court did not err in finding that termination of Father's parental rights is in the best interests of the child.**

Once a finding of statutory abandonment has been made, the magistrate court must then determine whether it is in the best interests of the child to terminate the parental relationship. *In re Aragon*, 120 Idaho at 611, 818 P.2d at 315 (1991). Numerous factors are to be considered when making this determination, including the stability and permanency of the child's current home, unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, improvement of the child while under other care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *See Doe v. Roe (in Re Doe)*, 133 Idaho 805, 992 P.2d 1205 (1999). A finding that the decision to terminate parental rights is in the best interests of the child must be based on objective grounds and supported by substantial and competent evidence. *Idaho Dep't of Health & Welfare v. Doe (In re Doe)*, 152 Idaho 953, 957, 277 P.3d 400, 404 (Ct. App. 2012).

The magistrate court weighed all relevant factors and determined that it is in IW's best interest to terminate Father's parental rights. IW is now eight years old and has only known Guardians as her parents. Father was incarcerated shortly after her birth and has had no contact with IW since he was released. Currently, Father lives in a drug and alcohol program facility in California with up to 40 other parolees. As a result, he does not have a suitable home for IW. Father is also currently on parole and is a registered sex offender for a sexual offense committed against IW's half-sister, MW.

Notably, Mother consented to the termination of her parental rights and believes it is in IW's best interest for Father's parental rights to be terminated as well so that Guardians may adopt IW. Guardians are the maternal grandmother and step-grandfather of IW and have been fully supporting and caring for her almost her entire life. IW has bonded with Guardians, believes that they are her parents, and appears to be well adjusted in their home. The magistrate court concluded that "IW needs consistent love and care. She should not have to wait for that. She has already waited far too long . . . ." We hold that there is substantial and competent evidence to support the magistrate court's determination.

## V.     CONCLUSION

We affirm the magistrate court's judgment terminating Father's parental rights to IW.

Chief Justice BURDICK, and Justices BEVAN, STEGNER and MOELLER CONCUR.