## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 47132

| | | |
|---|---|---|
| In the Interest of: Jane Doe I, Jane Doe II, and Jane Doe III, Children Under Eighteen (18) Years of Age. | ) ) ) ) | |
| -------------------------------------------------------- | ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | |
| Petitioner-Respondent, | ) ) | Boise, October 2019 Term |
| v. | ) ) | Opinion Filed: December 23, 2019 |
| JANE DOE (2019-17), | ) ) | Karel A. Lehrman, Clerk |
| Respondent-Appellant, | ) ) | |
| and | ) ) | |
| GUARDIAN AD LITEM, | ) ) | |
| Guardian Ad Litem-Respondent. | ) ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Victoria Olds, Magistrate Judge.

Order terminating parental rights, <u>affirmed</u>.

McFarland Law Office, Lewiston, for appellant. Joanna Maria McFarland argued.

Lawrence G. Wasden, Lewiston, for respondent. Floyd Leavitt Elmer Swanton argued.

Nolta Law Office, Lewiston, for respondent Guardian Ad Litem. Paige M. Nolta argued.

_____

BURDICK, Chief Justice.

Jane Doe ("Mother") appeals the Nez Perce County magistrate court's termination of her parental rights to her minor children Jane Doe I ("B.L.S."), Jane Doe II ("X.V.S."), and Jane Doe III ("A.C.S."). On December 11, 2018, the Idaho Department of Health and Welfare ("Department") filed a petition to terminate Mother's parental rights to B.L.S., X.V.S., and

1

A.C.S. After a four-day trial, the magistrate court found by clear and convincing evidence that termination was proper on the grounds of neglect and that termination was in the best interests of the children. The magistrate court also terminated the parental rights of John Doe ("Father"), who filed a separate appeal regarding termination of his parental rights to B.L.S. and A.C.S., but not X.V.S. because he is not the biological father of that child. On June 11, 2019, the magistrate court entered a final judgment terminating Mother's parental rights. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal concerns the termination of Mother's parental rights to her three minor children, B.L.S. (born March 25, 2008), X.V.S. (born December 31, 2014), and A.C.S. (born December 24, 2017). On Christmas Eve, 2017, the Department received a referral when A.C.S. was born prematurely at Gritman Medical Center in Moscow, Idaho. Mother's amniotic fluid had ruptured prematurely due to drug use. Tests confirmed that A.C.S. was prenatally exposed to methamphetamine. Shortly after her birth, A.C.S. was life-flighted to Sacred Heart Medical Center in Spokane, Washington for treatment.

On-call staff for the Department conducted an initial safety assessment and the Department's Region 2 Child Welfare Supervisor (Region Supervisor) met with Mother at Gritman Medical Center on December 27, 2017. Mother explained that she and Father had been in an on-and-off relationship for the past 20 years. At the time of the meeting, Mother and Father lived together in a camper on his family farm near Kendrick. Mother disclosed that she actively used methamphetamine, and had used methamphetamine while pregnant with A.C.S. She also explained that she and Father used methamphetamine together in their camper, sometimes with their children present.

She also described frequent incidents of domestic violence that occurred in the home. For instance, when the couple fought they would yell and throw appliances and other objects at each other. Mother recalled an incident where the windshield of one of their vehicles had been shattered when an object was thrown at it during a fight. X.V.S. was inside the vehicle at the time, and B.L.S. was possibly present as well. Mother also described an incident where Father "ripped the door off the hinges of the camper" during a "drug-induced altercation" and left it on the ground for days. During another incident, Father threatened to harm himself and Mother with a firearm while the children were "in the vicinity."

2

On January 2, 2018, based on the information Mother provided to the Region Supervisor and the rest of its investigation, the Department filed a motion to remove the children from the home under the Child Protection Act. The petition was granted the same day and a shelter-care hearing was scheduled for January 4, 2018. At the hearing, Mother stipulated to the Department retaining custody of all three children on the basis of an unstable home environment. Father was not present, but attended a continued shelter-care hearing on January 8, 2018, where he also stipulated to jurisdiction due to an unstable home environment. B.L.S. and X.V.S. were placed into foster care with one of Father's cousins, and A.C.S. was eventually placed into foster care with Father's sister after a one-month stay with another foster family.

After an adjudicatory hearing where Father and Mother again stipulated to the Department retaining jurisdiction and custody, the Department worked with the parents to develop a case plan. Mother agreed to the tasks in the case plan and it was adopted by the court on February 23, 2018.

Mother's case plan contained tasks for her to complete that were designed with the goal of establishing "stability in her life so she is able to be a safe parent to her children" by living "a sober life, free of abuse and neglect for herself and her children." The first task in Mother's case plan required her to complete a substance abuse assessment (GAIN-I assessment) and comply with the recommendations of the treatment provider. Mother was supposed to begin the first task no later than 15 days from the date the case plan was approved. The second task required Mother to establish and maintain sobriety, complete random urinalysis tests (UAs) at the request of Department staff, and self-report barriers to attending treatment or maintaining sobriety. The third task required Mother to attend and participate in mental health services. The fourth task required Mother to demonstrate stability in her housing status by establishing sober housing. Mother's fifth task required that she demonstrate the ability to meet her own basic needs as well as the needs of her children. This task included the requirement that she demonstrate financial stability to meet the needs of her children as well as her own. The case plan further specified that Mother could work toward accomplishing this task by accessing resources such as Idaho Housing, Community Action, or the Salvation Army to meet her children's needs, as well as her own. Mother's sixth task required that she participate in all scheduled visitation with her children and demonstrate her ability to recognize the needs of her children by responding to them in an age-appropriate manner. The seventh task required Mother to actively participate in all

3

reunification services with her children. The final task required Mother to address the domestic violence and relationship conflict with Father if they planned to stay together. The case plan listed individual counseling, anger-management evaluations, couples counseling, and parent counseling as possible services to be used in accomplishing this task.

The magistrate court held review hearings in May, June, and September of 2018 to evaluate the parents' progress on their case plans, the status of the children in their foster-care placements, and the Department's reunification efforts. At a review hearing on October 29, 2018, the Department requested an early permanency hearing on the grounds that both parents had made little progress on their case plans. Agreeing that the parents had made very little progress up to that point, the magistrate court moved the permanency hearing up from December 28, 2018, to November 26, 2018. At the permanency hearing, the magistrate court approved a permanency plan that sought termination of parental rights and relative adoption with the foster parents as the primary goal for each child.

The Department subsequently filed a petition to terminate the parental rights of both Mother and Father on December 11, 2018, approximately 11 months after the children had been placed in the Department's custody. At the time of the trial, Mother was living with Father in a house he was renting in Kendrick. The Department's petition asked the magistrate court to terminate Mother's parental rights on the following grounds:

### COUNT I

The children are neglected as defined in I.C. §§ 16-2005(1)(b), 16-2002(3)(a), and 16-1602(31)(a) [because they] are without proper parental care and control, and/or subsistence, medical and/or other care or control necessary for their well-being because of the conduct and/or omission of their parents, and/or their neglect or refusal to provide [for] them . . . .

### COUNT II

The children are neglected as defined in I.C. §§ 16-2005(1)(b), 16-2005(1)(d), 16-2002(3)(a), and 16-602(31)(b) because their parents are unable to discharge their responsibilities to and for them and, as a result of such inability, the children lack the parental care necessary for their health, safety and/or well-being. Such inability will continue for a prolonged indeterminate period . . . .

### COUNT III

The parents have neglected the children as defined in I.C. § 16-2005(1)(b) because the parents have failed to comply with the

4

Court's orders and/or the case plan in a Child Protective [A]ct case. [The children] have been in the custody of the Idaho Department of Health and Welfare since their removal on January 2, 2018.

After a four-day trial, the magistrate court made the following findings by clear and convincing evidence: the Department had legal custody of the children for 15 of the most recent 22 months without reunification occurring;[1] Mother failed to comply with the case plan, failed to provide proper parental care and control for her children, and is unable to discharge her parental responsibilities; and termination of Mother's parental rights was in the best interest of B.L.S., X.V.S., and A.C.S.

The magistrate court entered a final order terminating Mother's parental rights to B.L.S., X.V.S., and A.C.S. on June 11, 2019. Mother timely appeals.

## II. ISSUES ON APPEAL

1. Did the magistrate court abuse its discretion by holding the permanency hearing 11 months after B.L.S., X.V.S., and A.C.S. were placed in the Department's custody?

2. Is the magistrate court's decision to terminate Mother's parental rights to B.L.S., X.V.S., and A.C.S. supported by substantial, competent evidence?

## III. STANDARD OF REVIEW

Under Idaho Code section 16-2005(1), a court may terminate parental rights "if it finds that doing so is in the best interests of the child and that at least one of five grounds for termination is satisfied." *In re Doe (2014-23)*, 157 Idaho 920, 923, 342 P.3d 632, 635 (2015). The grounds set out by the trial court for terminating parental rights "must be proved by clear and convincing evidence." *In re Doe (2013-15),* 156 Idaho 103, 105–06, 320 P.3d 1262, 1264–65 (2014) (citing *Matter of Aragon*, 120 Idaho 606, 608, 818 P.2d 310, 312 (1991)); I.C. § 16-2009. To meet the clear-and-convincing standard, there must be "evidence indicating that the thing to be proved is highly probable or reasonably certain." *Matter of Doe II*, 165 Idaho 199, 202, 443 P.3d 213, 216 (2019) (quoting *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006)).

On appeal, this Court must conduct an independent review of the record, but "must draw all reasonable inferences in favor of the magistrate court's judgment, as the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or

---

[1] The first three days of the trial took place on February 28, March 1, and March 5, 2019. Mother gave birth to a fourth child on March 21, 2019, and the fourth day of the trial was continued from March 25 to May 2, 2019 at the request of the parents.

motive and to judge the character of the parties." *In re Doe (2014-23)*, 157 Idaho at 923, 342 P.3d at 635 (quoting *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010)). When a magistrate court has applied the clear-and-convincing standard, this Court "will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision." *Doe*, 150 Idaho at 49, 244 P.3d at 193. "Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotations omitted).

### IV. ANALYSIS

**A. The magistrate court did not abuse its discretion by holding the permanency hearing 11 months after B.L.S., X.V.S., and A.C.S. were placed in the Department's custody.**

Mother first argues that it was improper for the magistrate court to hold a permanency hearing 11 months into the case. For the reasons below, we hold that the magistrate court did not abuse its discretion by holding a permanency hearing at the 11-month mark.

The Child Protective Act provides that "[a] permanency hearing may be held at any time . . . ." I.C. § 16-1622(2)(b). However, the Act also provides that a permanency hearing must be held within 12 months from the date a child is removed from the home. *Id.* At a permanency hearing, a judge must "approve, reject or modify the permanency plan of the department and review progress in accomplishing the permanency goal." *Id.* Whether to approve, reject, or modify a permanency plan submitted by the Department is within the sound discretion of the trial court. *Matter of Doe*, 163 Idaho 565, 569, 416 P.3d 937, 941 (2018).

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

This Court has previously explained there is no requirement that a parent be provided a full year to comply with her case plan. *In Interest of Doe*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). For example, in *In Interest of Doe*, an early permanency was granted when the Mother of two children failed to comply with her case plan over the course of eight months. *Id.* She had not complied with any of the prescribed treatment nor had she done anything to show that she would be in a place to safely parent her children. *Id.* In granting permanency after eight

months, the magistrate court reasoned the Mother had failed to make progress on the case plan and that nothing was going to change significantly. *Id.* at 146–47, 426 P.3d at 1246–47. We upheld the magistrate court's decision, explaining that there was no requirement that the Mother be provided a year to comply with her case plan. *Id.*

In this case, the Department requested a permanency hearing be scheduled for November 26, 2018, approximately 11 months after B.L.S., X.V.S., and A.C.S. had been removed from Mother's custody. In deciding to hold the permanency hearing at 11 months, the court recognized that when to hold a hearing was discretionary, stating: "[a]nd under the law and under -- I guess the studies show, too, that you need to try to have permanency within -- a determination within 12 months. *It can be shorter*." The magistrate court also acted within the outer bounds of its discretion and within the applicable legal standards, by holding the hearing within the requisite 12-month period. Finally, the magistrate court reached its decision by exercise of reason, stating:

> I'm going to move up the permanency date . . . [T]he problem I see is that we had no progress. We were coming here and having no progress for over ten months, other than visitation, which also wasn't consistent and wasn't always sober either. So having seen -- and having seen the children in the courtroom, too, you can see the trauma on their faces . . . and in their behavior and how they react when they see their parents, when they don't see their parents.

Therefore, we find the magistrate court did not abuse its discretion in holding the permanency hearing 11 months from the date B.L.S., X.V.S., and A.C.S. were removed from the home.

Mother contends that the magistrate court contradicts itself by also finding that there had been recent progress. Mother cites to the following statement of the magistrate court in support of her argument:

> There is a need for continued foster care. As I said, it's . . . unwillingness of the parents to safely care for the children. We have been – we're almost at the eleventh month, and we've had no progress until very recently. And that's been forced progress. So we'll see, though. It's not -- as I said, whatever happens, you have to work very hard. But we have to have permanency in this case.

Mother argues that the magistrate court is making two separate findings regarding progress in the case. However, we read the magistrate court's first statement as describing a lack of progress for the first 10 months of the case, whereas the magistrate court's second statement explains that no progress had been made until recently. Read together, these statements describe 10 months of no

progress on the case plan, with forced progress finally beginning close to the 11-month mark. Therefore, the magistrate court did not contradict itself in making these two statements on Mother's lack of progress.

**B. The magistrate court's decision to terminate Mother's parental rights is supported by substantial, competent evidence.**

Termination of parental rights requires a two-part finding that (1) at least one of the five statutory bases for termination has been met, and (2) termination is in the best interests of the child. *In Interest of Doe I*, 163 Idaho 274, 277, 411 P.3d 1175, 1178 (2018) (citing *In re Doe (2014-23)*, 157 Idaho 920, 923, 342 P.3d 632, 635 (2015)); *see also* I.C. § 16-2005(1). Each part is discussed below.

1. Bases for termination

Idaho Code section 16-2005(1) lays out the five possible statutory bases for termination of parental rights. "Each statutory ground is an independent basis for termination." *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007) (citation omitted). The relevant statutory basis for termination in this case is neglect. *See* I.C. § 16-2005(1)(b).

The magistrate court found, by clear and convincing evidence, that Mother neglected her children as defined in Idaho Code sections 16-2002(3)(b), 16-1602(31)(a), and 16-1602(31)(b). We review each finding in turn.

i. Substantial, competent evidence supports the magistrate court's finding that Mother neglected her children as defined by Idaho Code section 16-2002(3)(b).

The magistrate court found by clear and convincing evidence that Mother neglected her children under Idaho Code section 16-2002(3)(b) because she failed to comply with a single task in the case plan, and the children had been in the legal custody of the Department for 15 of the most recent 22 months without reunification occurring. Idaho Code section 16-2002(3)(b) provides that a child is "neglected" where:

> The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:
>
> > (i) The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and
> >
> > (ii) Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

8

To find neglect for failure to comply with a court-ordered case plan, the magistrate court must "find that the parent is responsible, whether directly or indirectly, for non-compliance with the requirements of a case plan." *Dep't of Health & Welfare v. Doe (In re Doe)*, 164 Idaho 875, 879, 436 P.3d 1224, 1228 (2019) (citing *Idaho Dep't of Health & Welfare v. Doe (2016-14)*, 161 Idaho 596, 600, 389 P.3d 141, 145 (2016)). "This requirement reflects the reality presented by parents who engage in behavior that results in non-compliance with no apparent thought or consideration of the effect of that behavior upon the case plan." *Id.*

Mother's argument on appeal is essentially an attempt to relitigate the facts of the case below. A large portion of her brief is dedicated to rehashing the evidence presented at trial, arguing the efforts Mother made towards complying with the case plan were sufficient. However, we do not reweigh the evidence when reviewing the magistrate court's decision. So long as its decision is supported by evidence that a "reasonable mind might accept as adequate to support [its] conclusion," we will not disturb the magistrate court's findings of fact. *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010).

In this case, after laying out its findings of fact with exceptional detail, the magistrate court explained how it reached its decision:

> Mother had not completed one Case Plan task by the completion of trial, and has not substantially complied with any Case Plan task over the life of this case. She completed a GAIN assessment in March 2018 (late), and failed to follow any of its recommendations. She continued to actively use methamphetamine and marijuana, thus causing her to miss supervised visitations, individual and group counseling, random UAs, office meetings and some court hearings. She declined to engage fully in treatment until after her arrest. She has established sobriety, but has not been sober long enough to prove it will be maintained, and was in intense outpatient treatment in May 2019. Although Mother initially declared that her main struggle was not with substance abuse, but mental health, she failed to address her mental health and still does not attend mental health counseling. She chose instead to pursue couples counseling.
>
> Mother has not been stable long enough in her sobriety to demonstrate that she will be able to meet her own needs and those of her children. Enforced sobriety in jail and inpatient treatment (both structured environments) does not equate to sobriety in the community, nor does it excuse the lateness of her efforts. The court is saddened and disappointed that it took Mother's felony arrest

9

and incarceration before she chose to work on the Case Plan in any significant measure.

> Mother has not demonstrated an ability to recognize the needs of her children, especially with regard to the volatile, unhealthy and violent, relationship with Father. Mother downplays both the severity and significance of the domestic violence in the household. She excuses Father's violent behavior, which at times included weapons, and assumes the blame for some of the incidents. Until Mother addresses her own mental health and co-dependency issues through individual counseling (not substance abuse or couples counseling), she and her children remain at risk.

Simply put, Mother failed to comply with her case plan.

As to the other statutory requirements for establishing neglect under Idaho Code section 16-2002(3)(b), the magistrate court found that "[t]he Department . . . had custody for fifteen of the most recent 22 months, and reunification was not accomplished by the last day of the fifteenth month." Mother argues the magistrate court erred in finding that B.L.S., X.V.S., and A.C.S. were in the custody of the Department for 15 of the most recent 22 months because the children had not been in custody for 15 months at the time of trial. However, Idaho Code section 16-2002(3)(b) does not require the children to have been in the custody of the Department for 15 months at the time of trial, rather, it requires that the children be in the custody of the Department for 15 of the most recent 22 months at the time parental rights are terminated. *See Matter of Doe Children*, 164 Idaho 486, 491, 432 P.3d 35, 40 (2018) (holding that a magistrate court's finding of neglect under Idaho Code section 16-2002(3)(b) was supported by substantial, competent evidence when the children had been in the custody of the Department for 15 of the most recent 22 months at the time that the magistrate court ordered termination of parental rights).

The Department took custody of the children on January 2, 2018 and the magistrate court ordered termination of Mother's parental rights on June 11, 2019. Therefore, the children had been in the custody of the Department for 15 of the most recent 22 months without reunification occurring.

Mother also argues that the Department failed to make reasonable efforts towards reunification. However, whether the Department made reasonable efforts toward reunification is not part of the analysis when parental rights are terminated on the grounds of neglect. *See* I.C. § 16-2002(3)(b)(i)–(ii); *In re Doe*, 156 Idaho 682, 688 n.3, 330 P.3d 1040, 1046 n.3 (2014).

10

Therefore, substantial, competent evidence supports the magistrate court's finding that Mother neglected B.L.S., X.V.S., and A.C.S. under the definition of neglect provided in Idaho Code section 16-2002(3)(b).

ii.  Substantial, competent evidence supports the magistrate court's finding that Mother neglected her children as defined by Idaho Code sections 16-1602(31)(a) and 16-1602(31)(b).

The magistrate court also found by clear and convincing evidence that Mother neglected her children under Idaho Code sections 16-1602(31)(a) and 16-1602(31)(b). A "neglected" child under Idaho Code section 16-1602(31)(a) is a child "[w]ho is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them . . . ." A "neglected" child under Idaho Code section 16-1602(31)(b) is a child "[w]hose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being . . . ." In determining whether a child is neglected under Idaho Code section 16-1602(31), the court "may consider both past and current conduct." *In Interest of Doe Children*, 163 Idaho 367, 373, 413 P.3d 767, 773 (2018) (citation omitted). This Court has recognized that evidence of drug problems (which interfere with parental abilities), unstable employment or housing, and incarceration all support a finding of neglect. *Matter of Doe Children*, 164 Idaho at 490, 432 P.3d at 39 (citing *Idaho Dep't of Health & Welfare v. Doe (2016-32)*, 161 Idaho 754, 390 P.3d 1281 (2017)). Also, "infliction of perpetual domestic violence, even if not directed at the children, supports a finding of parental neglect as it provides for an unstable and dangerous home environment." *In re Doe*, 143 Idaho 343, 347, 144 P.3d 597, 601 (2006) (citation omitted).

In finding that Mother neglected B.L.S., X.V.S., and A.C.S. under Idaho Code sections 16-1602(31)(a) and 16-1602(31)(b), the magistrate court pointed to the "extreme volatility and violence surrounding the relationship between Mother and Father. . . ." The magistrate court explained that the violence occurred "over a substantial period of time," which, considered alongside the "severe substance use in the household" and instability in the home, established another basis for termination.

The evidence in the record is more than adequate to support this determination. The Department became involved in this case when A.C.S. was born prematurely due to being

11

prenatally exposed to methamphetamine. Mother admitted to using methamphetamine for years before the Department became involved and to actively using methamphetamine when she was supposed to be working her case plan. Mother was not able to maintain stable housing or employment at any point leading up to the termination trial. In 2018, Mother had a number of living arrangements, including: her car, the camper on the family farm, a two-week hospital stay at St. Joseph's hospital after a suicide attempt, the YWCA, the Nez Perce County Jail, and inpatient treatment at Stewards of Recovery. After she left inpatient treatment in January 2019, she lived at the Rising Sun for Women in Lewiston until her fourth child was born. Then she moved into the rental home in Kendrick leased by Father. At trial, mother testified that she was unemployed and relying on Father's income for support. Therefore, substantial, competent evidence supports the magistrate court's findings of neglect under Idaho Code sections 16-1602(31)(a) and 16-1602(31)(b).

2. <u>Best Interests of the Children</u>

As noted above, even though we find that substantial, competent evidence supports the magistrate court's determination that statutory bases for termination exist in this case, termination is only proper if it is also in the best interests of the child. I.C. § 16-2005(1). Here, the magistrate court found by clear and convincing evidence that termination of mother's parental rights was in the best interest of each child. Mother argues that the finding is not supported by substantial, competent evidence.

There is "no set list of factors a court must consider" when conducting a best-interests-of-the-child analysis. *Doe v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015). However, there are a number of factors that a trial court may consider, including "stability and permanency of the home, unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, improvement of [the] child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law." *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014) (citations omitted). A trial court may also consider "whether the child's needs are being met, and the child's need for stability and certainty." *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 797, 803, 275 P.3d 23, 29 (Ct. App. 2012) (citing *Doe v. Dep't of Health & Welfare, Human Servs. Div.*, 141 Idaho 511, 516–17, 112 P.3d 799, 804–05 (2005)).

12

The magistrate court stated the following in support of its conclusion that termination of both Mother's and Father's parental rights was in the best interests of the children:

> There is no basis to believe that Mother or Father can provide the safe, structured, and nurturing environment necessary to address these children's special needs. These needs arose due to the extreme neglect (both in utero and after birth) by both parents in the home due to their substance abuse, depression and domestic violence in the home in the presence of the children.

Here, substantial, competent evidence supports the magistrate court's decision that termination of Mother's parental rights was in the best interests of B.L.S., X.V.S., and A.C.S. First, the magistrate court considered that the needs of B.L.S. and X.V.S. were not being met when they were living with their parents. B.L.S.'s counselor testified that B.L.S. was forced into the role of peacemaker and caretaker while she lived with the family. He further testified about how instability in the home while she lived with her parents caused B.L.S. to suffer PTSD, adjustment disorder, anxiety, and depression, which led to nightmares and flashbacks. X.V.S. witnessed many of Mother and Father's episodes of domestic violence. X.V.S. was present when her Father tore the door to their camper-home off its hinges during a dispute and left it lying on the ground. She was also present when Father threatened to harm himself and Mother with a firearm during a drug-induced altercation. X.V.S. was inside the parents' vehicle when one of them threw an object at it, breaking the windshield. X.V.S.'s foster parent testified that when X.V.S. first entered foster care she had limited language skills and significant behavioral issues.

The magistrate court then considered that B.L.S. and X.V.S. have substantially improved while in foster care. B.L.S. and X.V.S.'s foster parent, who is also Father's cousin, testified that she had slowly taken over caring for X.V.S., so that B.L.S. could transition back into just being a child again. She further testified that she noticed a positive change in B.L.S.'s behavior after B.L.S. allowed her to take over as the caretaker for X.V.S. The frequency of B.L.S.'s nightmares and flashbacks also diminished significantly in foster care. X.V.S. was enrolled in preschool and her language skills improved. She gained weight, her hair filled in, and her behavioral issues became less severe over time.

As for A.C.S., the magistrate court first considered the circumstances of her birth. Mother did not seek prenatal care for A.C.S. and she was born testing positive for methamphetamine. When she left the hospital and went into foster care, A.C.S. would frequently spit-up and experience diarrhea. A.C.S. also suffered developmental delays and had limited use of her arms

13

as a result of prenatal exposure to drugs. A.C.S.'s foster family has nurtured her and A.C.S. has benefitted from being cared for by her foster family.

The magistrate court also found that B.L.S., X.V.S., and A.C.S. need stable, structured, safe, and sober environments in order to thrive. B.L.S.'s counselor testified that it was best for B.L.S. to remain in an environment where she felt safe and secure. The guardian ad litem also testified that B.L.S., X.V.S., and A.C.S. need a stable and peaceful environment. The evidence just discussed, coupled with the evidence of Mother's substance abuse, domestic violence issues, and mental health issues, provide ample support for the magistrate court's decision. Therefore, the magistrate court's determination that termination of Mother's parental rights was in the best interests of B.L.S., X.V.S., and A.C.S. is supported by substantial, competent evidence.

## V. CONCLUSION

Substantial, competent evidence supports the magistrate court's findings that Mother neglected her children and that termination of Mother's parental rights was in the children's best interest. Accordingly, we affirm the magistrate court's order terminating Mother's parental rights to B.L.S., A.C.S., and X.V.S. Costs are awarded to the Department.

Justices BEVAN, STEGNER, MOELLER, and TROUT, Pro Tem, **CONCUR.**