# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49702

| | |
|---|---|
| In the Matter of:  Jane Doe II, A Child Under Eighteen (18) Years of Age. | ) ) |
| JOHN DOE I and JANE DOE I, husband and wife, | ) ) |
|  | ) Filed:  August 4, 2022 |
| Petitioners-Respondents, | ) ) Melanie Gagnepain, Clerk |
|  | ) |
| v. | ) THIS IS AN UNPUBLISHED ) OPINION AND SHALL NOT |
| JANE DOE (2022-18), | ) BE CITED AS AUTHORITY |
|  | ) |
| Respondent-Appellant. | ) ) |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bear Lake County.  Hon. R. Todd Garbett, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

S. Criss James, Soda Springs, for appellant.

McKenzie and McKenzie, PA; Adam J. McKenzie, Preston, for respondent. Adam J. McKenzie argued.

_____

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the magistrate court's judgment terminating her parental rights to her minor child, J.H.  Mother argues the court erred by concluding that she abandoned and neglected J.H. and that terminating Mother's parental rights is in J.H.'s best interests.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother gave birth to J.H. on December 20, 2019, in Montpelier, Idaho.  In April 2020, J.H.'s father passed away unexpectedly.  At the funeral, the father's parents (Grandparents), who are the petitioners in this case, met J.H. for the first time.  Subsequently, Grandparents were in Idaho traveling and camping, and Mother asked them to babysit J.H. "a few times" in late spring

1

2020. Mother then asked Grandparents to care for J.H. for "two to three weeks." In July 2020, Mother received a government stimulus check, decided to move to Oregon for "a fresh start," and asked Grandparents to care for J.H. for "an extended period." At the end of July, Grandparents returned to their home in Ramah, New Mexico, and with Mother's consent, they took J.H. with them.

Thereafter, on "three or four occasions," Grandparents attempted to arrange for Mother and J.H. to visit in person, but Mother canceled the visits. Then, in November 2020, Grandparents arranged for Mother to visit J.H. in their home in New Mexico over the Thanksgiving holiday. Mother traveled to New Mexico with Grandparents' daughter and spent four days at Grandparents' home. During this visit, Mother interacted with J.H. minimally, slept much of the time, and used illegal drugs.

Since November 2020, Mother has not had any in-person contact with J.H. In January 2021, the magistrate court granted legal guardianship of J.H. to the grandfather and Mother did not oppose this guardianship. Mother's last contact with J.H. was in April 2021, during a video call that Grandparents arranged. In May 2021, Grandparents telephoned Mother and told her they were contacting an attorney to pursue adopting J.H. Since that call, Mother has not had any contact with J.H. or Grandparents. At some point, Mother moved into her grandfather's basement in Garden City, Utah, and Grandparents moved with J.H. to Taylor, Arizona.

On September 15, 2021, Grandparents filed a petition to terminate Mother's parental rights, alleging that Mother had abandoned and neglected J.H. and that terminating Mother's parental rights is in J.H.'s best interests. The magistrate court held a termination hearing in February 2022. At the time of the hearing, J.H. was two years old and had been in Grandparents' care for about nineteen months. At the hearing, the court heard the testimony of Mother, Grandparents, Grandparents' two daughters, and Mother's aunt.

In April 2022, the magistrate court entered written findings of facts and conclusions of law terminating Mother's parental rights to J.H. The court concluded Mother abandoned J.H., neglected her, and is unable to discharge Mother's parental responsibilities. Although the magistrate court did not cite any legal authority in its decision, its legal conclusions correlate with the grounds for terminating parental rights under Idaho Code § 16-2005(1), including under subsections (a) if a parent abandons a child; (b) if a parent neglects a child; and (d) if a parent is unable to discharge her parental responsibilities. Additionally, the court concluded that

2

terminating Mother's parental rights is in J.H.'s best interests. *See* I.C. § 16-2005(1) (providing court may terminate parental rights if one or more grounds for termination exists and termination is in child's best interests).

Mother timely appeals.[1]

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id*. The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143

---

[1]     Both the magistrate court's findings of fact, conclusions of law, and order and the court's judgment are mistakenly dated April 2020. The file stamps, however, show these documents were filed on April 19, 2022.

Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.
## ANALYSIS

### A.       Abandonment

Mother challenges the magistrate court's conclusion that she abandoned J.H. *See* I.C. § 16-2005(1)(a) (providing abandonment is grounds for termination). Abandonment occurs when "the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact." I.C. § 16-2002(5) The willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, the failure to have regular personal contact, or some other failure. *Doe I v. Doe II*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010). No definition of "normal parental relationship" exists. *Id.* Rather, determining whether such a relationship exists depends on the circumstances of each case. *Id.* "The key inquiry regarding 'willfulness' is whether a parent is capable of maintaining a normal relationship with the child." *Doe I v. Doe*, 165 Idaho 199, 203, 443 P.3d 213, 217 (2019). Failure to maintain a normal parental relationship without just cause for a period of one year constitutes prima facie evidence of abandonment.[2] I.C. § 16-2002(5).

---

[2]       If the petitioner is a grandparent who is seeking to adopt the child, then a parent's willful failure to maintain a normal parental relationship without just cause for six months constitutes prima facie evidence of abandonment. I.C. § 16-2002(5). Although the petitioners in this case are J.H.'s grandparents and they have alleged an intent to adopt J.H., the record does not reflect Grandparents have actually petitioned for adoption. For this reason, we consider whether Mother willfully failed to maintain a normal parental relationship without just cause for one year.

The petitioner bears the burden of persuasion to show by clear and convincing evidence that the parent abandoned the child, including that the parent does not have just cause for failing to maintain a normal relationship. *Doe I v. Doe II*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). If the petitioner meets this burden, then the parent must show just cause for the failure to maintain a normal relationship. *Id.* In determining just cause, the court should consider evidence of the logistical and financial difficulties associated with maintaining a normal parental relationship. *Id.* If the trial court finds no just cause, then the petitioner has met the burden of persuasion. *Id.*

The magistrate court in this case found that "Mother has not maintained a parental relationship of any kind with [J.H.] since at least July 2020." Mother does not dispute that she failed to maintain a normal parental relationship since July 2020. Rather, she argues that her failure was not willful and that she had "just cause for the lack of contact between July of 2020 up until [Grandparents] informed [her] they would obtain counsel to terminate her parental rights in April of 2021." In support of this argument, Mother states the unexpected death of J.H.'s father "had a traumatic effect" on Mother and left her as "the only parent to provide for [J.H.]," causing Mother "to struggle financially with housing and transportation and in other aspects of her life." Further, Mother states she began "struggling mentally with depression and began using controlled substances." Finally, she states that Grandparents' return to New Mexico with J.H. "created an obstacle" for Mother "to have regular contact" with J.H. and that her "young age" made telephone and videophone contact "less meaningful." Mother contends the magistrate court erred by "not examining [Mother's] extremely difficult position."

Contrary to Mother's argument, however, the magistrate court did consider Mother's circumstances when concluding she abandoned J.H. For example, the court found that Mother was "suffering from depression, drug addiction, and was reeling from [the father's] death." Further, the evidence shows that, although Mother struggled financially, Grandparents attempted to ameliorate these issues by arranging for Mother's transportation, offering to meet her when they were in the area, and paying for her phone bills on occasion. Mother did not dispute this evidence and provides no explanation why she canceled the visits Grandparents attempted to facilitate. *See, e.g.*, *Doe v. Doe (2014-12)*, 157 Idaho 59, 333 P.3d 874 (Ct. App. 2014) (concluding mother failed to show financial and logistical difficulties constituted just cause where grandmother facilitated visitation). Further, Mother provides no explanation for her failure to maintain any contact with

J.H. after April 2021. Although Grandparents informed Mother in May 2021 that they intended to adopt J.H., their intention does not excuse Mother's failure to contact J.H. thereafter.

Moreover, Mother does not assert that she had just cause for failing to pay for J.H.'s reasonable support, which is an independent basis to conclude Mother failed to maintain a normal parental relationship. *See Doe I v. Doe II (2016-23)*, 161 Idaho 532, 536, 387 P.3d 785, 789 (2016) ("[T]he lack of reasonable support, by itself, establishes abandonment."). Specifically, Mother does not challenge the magistrate court's findings that "Mother has provided no care or support for [J.H.] since July 2020" or that "Grandparents have been the sole source of support, care, and stability for [J.H.] since July 2020." Regarding Mother's failure to pay for J.H.'s support, Mother states only that she was "never ordered or asked to pay child support or pay for other child expenses." That Mother was neither asked nor ordered to pay reasonable support for J.H., however, is not just cause for failing to pay for her reasonable support. *Cf. Doe*, 165 Idaho at 203, 443 P.3d at 217 (noting father testified he never paid support because he was never asked to pay and affirming court's conclusion that father abandoned child for failure to pay reasonable support).

Mother's reliance on *Doe I v. Doe II*, 148 Idaho 713, 228 P.3d 980 (2010), and *Roe v. Doe*, 143 Idaho 188, 141 P.3d 1057 (2006), is misplaced. These cases are distinguishable. In *Roe*, the Idaho Supreme Court reversed the magistrate court's termination of the father's parental rights "in light of the evidence of just cause, which was produced but apparently was not considered." *Id.* at 192, 141 P.3d at 1061. For example, the magistrate court made no findings about the "financial and logistical difficulties" of visiting the child, who had moved 1,400 miles away with her mother; the father's injuries impacting his ability to pay child support; the child's young age "lessen[ing] the meaningfulness of cards and letters"; or the fact that "some of father's phone calls went unanswered." *Id.*

Unlike the magistrate court in *Roe*, however, the magistrate court in this case did consider the evidence of Mother's alleged just cause for not maintaining a normal parental relationship, including her drug addiction, depression, and grief. Although the court did not make specific findings about the travel distance between Mother and Grandparents, it found that Grandparents encouraged Mother to visit J.H. and arranged for visits but that Mother cancelled all but one of these visits and did not communicate with J.H. at all after April 2021.

In *Doe I*, the Idaho Supreme Court affirmed the magistrate court's denial of a petition to terminate the father's parental rights, concluding the petitioners failed to prove the father had

willfully failed to maintain a normal parental relationship. *Id.* at 718, 228 P.3d at 985. The Court ruled that "a parent does not *willfully* fail to maintain a normal parental relationship unless the parent has the ability to do so and does not." *Id.* It concluded the father's abandonment was not willful because the terms of his probation and treatment program prohibited him from contacting the children and because the mother had actively opposed contact between the children and their father. *Id.* By contrast, in this case, Grandparents actively attempted to facilitate visits between Mother and J.H., and Mother had no prohibitions like imprisonment, probation, or treatment that precluded her from contacting J.H.

Substantial and competent evidence supports that, after July 2020, Mother failed to pay reasonable support for J.H. and to maintain regular contact with her. Further, Mother failed to show that her conduct was not willful and that she had just cause for her conduct. Accordingly, the magistrate court did not err by concluding Mother abandoned J.H. by willfully failing to maintain a normal parental relationship for more than one year without just cause. *See* I.C. § 16-2002(5) (defining abandonment).

## B. Neglect

Mother also challenges the magistrate court's conclusion that she neglected J.H. A "neglected" child is a child "[w]ho is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents" or "[w]hose parents . . . are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being." I.C. § 16-1602(31)(a), (b). The Idaho Supreme Court has recognized that, among other things, unstable housing, unstable employment, and a drug problem that interferes with parenting support a determination of neglect. *State, Dep't of Health & Welfare v. Doe (2019-32)*, 166 Idaho 173, 177-78, 457 P.3d 154, 158-59 (2020).

On appeal, Mother notes the magistrate court "did not state specifically . . . how [she] neglected [J.H.]" and presumes the court based its conclusion on Mother's "use of illegal drugs." Regarding her drug use, Mother asserts she "had a 60-day period of sobriety" at the time of the termination hearing, "was participating in an addiction recovery program," and "is working on obtaining mental health counseling." While Mother is correct that the court did not specifically indicate which of its factual findings related to its conclusion of neglect, the court made numerous findings in support of its conclusion, including that "Mother has provided no care or support for

the [child] since July of 2020"; "Mother has not had a long-term stable home" or "long-term stable employment" since spring of 2020; she has a drug addiction; and she acknowledges she "needs" but "is unable to pay for mental health counseling."

The magistrate court's considerations of these facts was appropriate for determining neglect, and substantial and competent evidence supports the court's conclusion that Mother neglected J.H. For example, Mother testified at the hearing that "for the last, like year and a half," she could not "actually claim anywhere as a steady place of housing" and that she had been "moving from place to place." At the time of the termination hearing, she had recently moved into her grandfather's basement, which she was converting into an apartment. Regarding employment, Mother testified that she had been working two days a week at a restaurant for a "few months" and at a construction job "a few days a week" for a "few weeks" but without a regular schedule because she was caring for her elderly, ill grandfather. Despite this employment, Mother did not provide any support for J.H., and at the time of the termination hearing, Mother testified she had no bank account and only $13 in cash.

Although Mother testified that she had been attending narcotics anonymous and had been "sober for 60 days," she acknowledged she had a substance abuse problem, had previously used methamphetamine on a "consistent" basis, and had not yet received any mental health counseling. Further, Mother acknowledged she did not have "a lot of contact" with J.H. explaining, "I knew I was being a crappy parent. And--and I didn't want to change yet." Finally, Mother did not dispute any of the other witnesses' testimony, including that she has not provided any support for J.H. other than some publically subsidized baby formula, which Grandparents used for approximately three months.

Although Mother's recent efforts to improve her situation and to remain sober are commendable, they are inadequate to overcome the evidence that she has unstable housing and employment, lacks financial resources, and has neither supported nor cared for J.H. since at least July 2020. *See Idaho Dep't of Health & Welfare v. Doe (2016-32)*, 161 Idaho 754, 761, 390 P.3d 1281, 1288 (2017) (affirming conclusion that "Mother's recent and modest improvements were insufficient to overcome her history of demonstrated unfitness"). Accordingly, the magistrate court did not err by concluding Mother neglected J.H.

8

**C. Child's Best Interests**

Mother also challenges the magistrate court's conclusion that terminating her parental rights is in J.H.'s best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider, among other facts, the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care, and the parent's efforts to improve her situation. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

On appeal, Mother asserts that "the evidence establishes [she] has shown a change in her conduct so that she may assume her parental duties." As noted above, however, Mother has had a problem with substance abuse and lacked stable housing and employment during most of the time Grandparents have cared for J.H. Further, Mother has failed to contribute to the child's financial support since July 2020. Moreover, Mother admitted at the termination hearing that she remains unprepared to parent J.H. For example, when asked about J.H.'s best interests, Mother acknowledged that J.H. does not know Mother; she is "comfortable" with J.H. remaining with Grandparents; and Mother would "never take [J.H.] away" from them. Further, Mother also does not dispute that she never asked Grandparents to return J.H. Although Mother contends she loves J.H., Mother's love does not override the magistrate court's findings regarding J.H.'s best interests. *See Idaho Dep't of Health & Welfare v. Doe (2014-17)*, 157 Idaho 694, 703, 339 P.3d 755, 764 (2014) (noting love does not override court's findings). For these reasons, the court did not err by concluding that termination of Mother's parental rights is in J.H.'s best interests, including J.H.'s needs for stability and certainty. *See Idaho Dep't Health & Welfare v. Doe*, 152 Idaho 797, 275 P.3d 23 (Ct. App. 2012) (noting "permanency and stability" are of "great importance" to young children).

9

**D.     Attorney Fees**

Grandparents request attorney fees under I.C. § 12-121.  A court may award reasonable attorney fees under I.C. § 12-121 "to the prevailing party or parties when the judge finds that the case was brought, pursued, or defended frivolously, unreasonably or without foundation."  An appeal is generally considered frivolous where it disputes the trial court's factual findings and simply seeks the reweighing of evidence.  *Doe I  v. Doe (2019-23)*, 166 Idaho 47, 57, 454 P.3d 1130, 1140 (2019).  The Idaho Supreme Court has held that, considering the seriousness of the liberty interests affected in parental termination cases, an appeal to reexamine conflicting evidence is not frivolous.  *Id.*

On appeal, Grandparents assert Mother's "appeal is a pursuit of claims which lack necessary foundation as [Mother] did not dispute any evidence presented by [Grandparents] at trial, but rather [Mother] straightforwardly agreed with everything presented by [Grandparents]."  This argument, however, addresses Mother's trial testimony and not the alleged frivolous nature of her appeal.  In particular, Grandparents do not assert Mother's appellate argument--that her conduct was not willful and she had just cause for that conduct--is frivolous, unreasonable, or without foundation.  Accordingly, we decline to award attorney fees under I.C. § 12-121.

**IV.**

**CONCLUSION**

Substantial and competent evidence supports the magistrate court's conclusions that Mother abandoned and neglected J.H. and that terminating Mother's parental rights is in J.H.'s best interests.  Accordingly, we affirm the magistrate court's judgment terminating Mother's parental rights.  We decline to award Grandparents costs or attorney fees on appeal.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.