**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 53666**

| | | |
|---|---|---|
| In the Matter of: John Doe I, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed: June 18, 2026 |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JANE DOE (2026-04), | ) ) | BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Anson L. Call, II, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Jessalyn R. Hopkins, Conflict State Public Defender, Pocatello, for appellant.

Hon. Raúl R. Labrador, Attorney General; Jason R. Chandler, Deputy Attorney General, Pocatello, for respondent.

---

HUSKEY, Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights to John Doe I (Child). Doe argues there was insufficient evidence presented at trial to support the magistrate court's finding that she neglected Child, and that terminating Doe's parental rights is in Child's best interests. For the reasons stated below, we affirm the judgment terminating Doe's parental rights.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

This case is one of three cases that were consolidated in the magistrate court but are not consolidated on appeal. The parties in the consolidated cases are Doe, the father of Child (Father),

and Father's wife (Stepmother).[1] Stepmother is the biological parent of two other minor children (Children), who are not biologically related to Doe or Father.[2]

Child was born in April 2022 and lived with Doe and Doe's parents. When Child was approximately five months old, Doe and Father's relationship ended, and Doe began dating another man. Doe and Child moved in with Doe's boyfriend in December 2022. The three then moved to Oregon, and Doe and her boyfriend married. In July 2023, the Oregon Department of Children and Family Services (Oregon DCFS) opened an investigation into Doe and her husband over allegations that Child had been burned and was given cold showers as a punishment during toilet training. Doe told Oregon DCFS that Child had burned his hand on a heat lamp for a reptile tank.

Oregon DCFS had ongoing safety concerns for Child, but Doe and her husband became uncooperative with the Oregon investigation. Because of the safety concerns and lack of cooperation, Oregon DCFS placed Child with Father in Idaho. At that time, Father lived with Stepmother and Children. Eventually, Doe witnessed her husband become aggressive toward their child in common, Child's younger half-sister, and Doe sought and obtained a protection order against him.

A short time after Child was placed with Father and Stepmother, Child was taken into protective custody following a diagnosis of abusive head trauma that occurred while Stepmother was Child's sole caregiver. The Idaho Department of Health and Welfare (Department) filed a Child Protective Act (CPA) petition alleging Child was abused, abandoned, neglected, homeless, or lacked a stable home environment; Child was subsequently placed into the temporary custody of the Department. Following an adjudicatory hearing, the Department was granted continued temporary custody of Child, and a case plan was approved and adopted for Doe. Thereafter, the Department filed a petition for termination of Doe's parental rights and adoption of Child. The termination trial was held July 28 and August 1, 2025, and October 16-17, 2025. Although Doe made little progress on her case plan by the beginning of the trial, by the time the trial

---

[1]     Father and Stepmother were in a dating relationship but later married during the Child Protective Act case. For ease of reference, we will refer to her as Stepmother regardless of her marital status at any given time.

[2]     Father's parental rights to Child were also terminated; that appeal is pending in Docket No. 53692. Stepmother's parental rights to Children were also terminated; that appeal is pending in Docket No. 53700.

2

recommenced in October, Doe had substantially complied with her case plan. Doe obtained stable housing and sufficient means to support herself and Child.

Following trial, the magistrate court found that Doe neglected Child on two alternate bases: (1) Child was without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being, because of the conduct or omission of Doe and/or Doe's neglect or refusal to provide them (Idaho Code §§ 16-2005(1)(a)(ii), 16-2002(3)(a) and 16-1602(31)(a));[3] and (2) Doe was unable to discharge her parental responsibilities, and as a result of such inability, Child lacks the parental care necessary for his health, safety, or well-being (I.C. §§ 16-2005(1)(a)(ii), 16-2002(3)(a) and 16-1602(31)(b)). The magistrate court found Doe had complied with her case plan and thus, there was no finding of neglect on that basis. The magistrate court also found Doe was unable to discharge her parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals and/or well-being of Child (I.C. § 16-2005(1)(a)(iv)), and that termination of Doe's parental rights is in Child's best interests. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

---

[3]     Although the magistrate court cites to I.C. §§ 16-2005(1)(a)(ii) and 16-2002(30)(a), it is clear it was referring to I.C. §§ 16-2002(3)(a) and 16-1602(31)(a).

3

# III.

# ANALYSIS

## A. Statutory Basis for Termination

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Similarly, I.C. § 16-1602(31)(b) defines neglect as occurring when a child's parents are unable to discharge their

4

responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being.

Doe argues there was insufficient evidence presented at trial to prove that she neglected Child by failing to provide Child with proper parental care and control or by her inability to discharge her parental responsibilities. Doe also argues that the magistrate court did not consider all relevant evidence. Although Doe challenges the magistrate court's finding of neglect in her opening brief, she fails to challenge the magistrate court's finding that Doe was unable to discharge her parental responsibilities pursuant to I.C. § 16-2005(1)(a)(iv). If the magistrate court grants a judgment on more than one independent basis and the appellant does not challenge each basis for termination, then we must affirm the judgment. *Idaho Dep't of Health & Welfare v. Doe (2016-09)*, 163 Idaho 707, 711, 418 P.3d 1216, 1220 (2016). In her reply brief, Doe acknowledges that she did not address the independent statutory basis but argues because the finding of neglect by failing to discharge parental responsibilities is similar to the independent basis of failing to discharge parental responsibilities, her argument as to the finding of neglect on that basis equally applies to the independent statutory basis. We disagree and affirm the magistrate court's finding that there was a statutory basis upon which to terminate Doe's parental rights. But even if arguing one statutory basis preserves an argument regarding a different statutory basis, Doe's argument fails on the merits.

Applying Doe's arguments to all the statutory bases upon which the magistrate court found her parental rights could be terminated, Doe is still not entitled to relief  because the magistrate court's findings that Doe neglected Child pursuant to I.C. §§ 16-2005(1)(a)(ii), 16-2002(3)(a) and 16-1602(31)(a) or (b), and that Doe is unable to discharge her parental responsibilities pursuant to I.C. § 16-2005(1)(a)(iv) are supported by substantial evidence. The magistrate court found Doe neglected Child because Child was without proper parental care and control necessary for his well-being because Doe failed to protect Child from abuse at the hands of her husband. According to the magistrate court, not only did Doe fail to protect Child, but she also attempted to hide the truth from Oregon DCFS. The evidence presented at trial supports this finding.

At the termination trial, when asked about the burn on Child's hand, Doe testified the burn was caused by a reptile heat lamp during a game she was playing with Child. Doe testified the burn was caused when Child tripped over her mattress and "caught himself with the tank lamp."

Doe did not remember Oregon DCFS workers telling her the burn was not consistent with a heat lamp.

Doe's husband testified that Child burned himself while the husband was using marijuana and that he "probably could have stepped in and stopped it if [he] had been paying a little more attention." Doe's husband also testified that Doe was in the room when it happened, but she told a different story to Oregon DCFS workers. Doe's husband testified that both he and Doe gave Child cold showers as a way to toilet train Child, and it was his and Doe's idea to do so. Doe's husband also testified that he saw Doe "lash[] out" at Child by "sitting him down a little rough, pulling his legs out from underneath him, flicking him in the forehead, [and] bopping him in the mouth lightly."

The magistrate court found Doe neglected Child because she did not provide proper parental care and control pursuant to I.C. §§ 16-2005(1)(a)(ii), 16-2002(3)(a), and 16-1602(31)(a).[4] The evidence in support of this finding was that Doe failed to protect Child from physical abuse by her husband. However, the magistrate court also found that Doe failed to protect Child from the ongoing marijuana use in Child's presence and attempted to hide the truth from Oregon DCFS workers. The magistrate court found that Doe "repeatedly failed to recognize the dangers to [Child]" for significant periods of time. Next, the magistrate court found Doe neglected Child because Doe was unable to discharge her parental responsibilities pursuant to I.C. §§ 16-2005(1)(a)(ii), 16-2002(3)(a) and 16-1602(31)(b), for the same reasons supporting the first finding of neglect and because Doe demonstrated poor judgment throughout the CPA case. The magistrate court noted that Doe had improved in this regard in the months leading up to the trial but failed to demonstrate the ability to discharge her parental responsibilities through the exercise of good judgment for any extended period of time.

Finally, the magistrate court found Doe was unable to discharge her parental responsibilities pursuant to I.C. § 16-2005(1)(a)(iv). The evidence in support of this finding is much the same as was used to establish the two alternate statutory bases of neglect. In addition, the magistrate court found Doe's dependency on others to meet her and Child's basic needs "creates [an] inherent and ongoing risk that [Child] will be placed in harm's way." For example,

---

[4] Although the magistrate court cited to I.C. § 16-2002(30)(a) as this basis, it is clear from the context that is a typographical error.

the magistrate court was concerned that Doe's housing has been "tumultuous," and she has "always depended on others to provide her with housing." The record supports this finding.

Doe argues that "no matter the explanation of how the burn occurred," it is not abuse as defined in the statute, as "abuse 'may not be the product of an accidental occurrence.'" Doe asserts that because Child accidentally grabbed the hot marijuana pipe and because the cold showers did not include bruising, burns, or other physical injury as defined in the statute, there was not substantial evidence she abused Child and therefore, there was not substantial evidence that she failed to protect Child. This argument is without merit as the abuse was not a singular occurrence nor was it all accidental. The evidence was that Child's hand was burned, and he was subjected to at least one cold shower as a punishment during toilet training. This is more than one occurrence. Additionally, even if the burn was accidental, the infliction of the cold shower was not. Finally, this does not address the other bases upon which the magistrate court found neglect--like the failure to protect Child from the ongoing marijuana use in Child's presence and the failure to disclose the truth to Oregon DCFS.

Doe argues the magistrate court did not consider certain evidence, such as evidence that Doe substantially complied with her case plan. However, the magistrate court specifically noted that "Doe complied with her case plan," but that compliance occurred "in the months leading up to the trial." And that, because Doe's compliance was for only a few months and Doe's "judgment over [Child's] life has resulted in such significant harm to [Child], and her decision to work the case plan has come so late," that "the Court has very serious ongoing concerns about her ability to meet [Child's] needs and to protect him from harm for the remainder of his minority." Moreover, the Idaho Supreme Court has affirmed a magistrate court's finding of neglect where compliance with the case plan was "too little, too late." *See Idaho Department of Health and Welfare v. Doe*, 161 Idaho 754, 761, 390 P.3d 1281, 1288 (2017) (holding no error in the magistrate court's conclusion that Mother's recent and modest improvements were insufficient to overcome her history of demonstrated unfitness); *In re Doe (2011-18)*, 152 Idaho 644, 649-50, 273 P.3d 685, 690-91 (2012) (holding no error in magistrate court's conclusion that Father's improvements were "too little, too late.")

Doe also argues it was contradictory for the magistrate court to find that although Doe complied with her case plan in the months leading up to the termination trial, she did not exercise good judgment for extended periods of time. That finding is supported by substantial evidence.

7

This case began in Oregon in July 2023 and was transferred to Idaho in September 2023. The case plan was entered November 14, 2023. The termination trial was held July 28 and August 1, 2025, and October 16-17, 2025. As late as March 25, 2025, Doe was non-compliant with her case plan, was "kind of" refusing contact with the Department, and was still living with her husband. On that date, a home visit was scheduled but had to be cancelled because Doe's husband stated that if any Department workers came to his house he would "line [them] up execution style" and shoot them. It was not until April 2025 that Doe obtained the protection order against her husband, despite Oregon DCFS's concerns in July 2023 about power and control dynamics that Doe was not willing to acknowledge. Thus, the record supports Doe's demonstrated poor judgment (failing to recognize the risk her husband posed to Child) for an extended period of time (nearly two years). Even as late as June 2025, the Department noted Doe's untreated mental health issues.

It was not until August 2025, contemporaneously with the first part of the termination trial, that the Department noted Doe was in compliance with all the conditions of her case plan. But even then, the Department noted that "[Doe] does not appear to be aligned with her children with where they are developmentally and sometimes has unrealistic expectations for her children."

To the extent Doe challenges the magistrate court's weighing of the evidence, it is well established that appellate courts in Idaho do not reweigh evidence. *See, e.g.*, *Doe*, 143 Idaho at 388, 146 P.3d at 654. Instead, we defer to the magistrate court's unique ability to "accurately weigh the evidence and judge the demeanor of the witnesses" and take into account the magistrate court's "superior view of the entire situation." *Doe v. Doe*, 133 Idaho 805, 809, 992 P.2d 1205, 1209 (1999).

There was substantial evidence to support the magistrate court's findings that Doe neglected Child by Doe's failure to provide proper parental care and control and Doe's inability to discharge her parental responsibilities. Similarly, there was substantial evidence to support the magistrate court's finding that Doe was unable to discharge her parental responsibilities. As such, the record supports the magistrate court's findings regarding the statutory bases under which Doe's parental rights were subject to termination.

## B. Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State*, *Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When

determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Doe argues there was no substantial and competent evidence presented to conclude that termination was in the best interests of Child. We disagree.

The magistrate court considered that Doe failed to protect Child from physical abuse at the hands of her husband and attempted to hide the truth about how Child was harmed to protect her husband. Doe argues there was "no evidence in the record that [Doe] could not meet the child's needs" and that her grandparents testified Doe could remain living with them as long as she needed. However, there was also testimony that Doe's housing was not stable because Doe's relationship with her grandparents had been tumultuous in the past, Doe's grandparents turned her phone off when they have had disagreements, and the grandparents evicted Doe from their home on a prior occasion. Although the magistrate court noted Doe's improvement in her compliance with the case plan, the compliance came too late. Despite that compliance, the magistrate court had "very serious ongoing concerns about [Doe's] ability to meet [Child's] needs and protect him from harm for the remainder of his minority. [Child] has a permanent placement available with his foster family, where he has recovered well and is thriving." Additionally, the evidence showed that the foster mother is Child's biological great-grandmother, and that Child and Doe lived with her following Child's birth. The foster mother testified she hoped to adopt Child if she was permitted to do so, and her husband also was willing and able to adopt Child.

There is substantial and competent evidence to support the magistrate court's determination that terminating Doe's parental rights is in the best interests of Child.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's finding of neglect under two alternate statutory bases. Substantial and competent evidence also supports the alternative finding that Doe was unable to discharge her parental responsibilities. Finally, substantial evidence supports the magistrate court's finding that terminating Doe's parental rights is in the best interests of Child. Therefore, the magistrate court's judgment terminating Doe's parental rights is affirmed.

Chief Judge TRIBE and Judge LORELLO **CONCUR**.